**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **NO. 20-mj-03061-KAR** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS
MOTION TO STAY AND OBJECTION TO MAGISTRATE JUDGE'S PRE-TRIAL
RELEASE ORDER

The United States of America, by and through its counsel, Andrew E. Lelling, United States Attorney for the District of Massachusetts and Steven H. Breslow, Assistant United States Attorney (the "Government"), respectfully submits the instant supplemental memorandum in support of its motion to stay and objection the April 15, 2020 Order of the Magistrate Judge denying the Government's motion for detention of the defendant John Michael Rathbun (the "defendant" or "Rathbun").

The Defendant Should Be Detained

1.      The Government's Motion

As the Government set forth in its motion to stay (D.xx), on April 15, 2020, the defendant was arrested and charged with violating two sub-sections of the arson statute, 18 U.S.C. §§ 844(d) and 844(i), after he placed a firebomb outside Ruth's House, a Jewish-sponsored assisted living facility on April 2, 2020. D.1 (Complaint). The defendant should be detained because no condition or combination of conditions will reasonably assure the safety of any other person and the community, and all of the factors identified in 18 U.S.C. § 3142(g) weigh heavily in favor of detention. The offense is grave and the evidence is powerful; the defendant's personal history,

including his criminal history and history of drug abuse, is deeply troubling; the defendant committed the charged offenses while on state probation; and the defendant's release returns him to the conditions in which he committed the crime:  at home and just a few minute's drive from Ruth's House, with his release unsecured by electronic monitoring or even a bond.

2.      Standard of Review.

In reviewing a detention order of a Magistrate Judge, the District Court should engage in *de novo* review.  *United States v. Tortora*, 922 F.2d 800, 883, n.4 (1st Cir. 1990); *see United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) (stating that the District Court should not simply defer to the judgment of the Magistrate Judge, but rather must reach its own independent conclusions). "In doing so, the Court may reject the magistrate judge's fact finding and start the hearing anew or may accept the findings of fact made by the magistrate and hear additional facts and argument." *United States v. Oliveira*, 239 F.Supp.2d 165, 167 (D. Mass. 2017) citing *United States v. Marquez*, 113 F.Supp.2d 125, 127 (D. Mass. 2000)).

3.      The Defendant Should Be Detained

Courts have routinely detained defendants charged in similar circumstances, and this Court should do so here.

For example, in *United States v. O'Neill*, 144 F.Supp.3d 428 (W.D.N.Y. 2015), the District Court detained a defendant who built a pipe bomb, which had detonated in his garage, injuring the defendant.  The court first found that the nature of the offense and the weight of the evidence – the possession of the device as well as other similar devices and their components, along with white supremacy literature - supported detention based upon danger.  *Id.* at 436-37 (rejecting defendant's claim that he was manufacturing explosive to remove a tree stump).  The court next found that the defendant's personal history favored detention:  the defendant had an alcohol problem, which had

resulted in the loss of employment and two DUI charges, and was being treated for depression and anxiety. Id. at 437. The court lastly found that the nature and seriousness of the risk of danger supported detention, and observed that the gravity of the risk was underscored by the defendant's own injury. *Id.*

Compared to *O'Neill*, Rathbun's charged conduct was as dangerous, if not more so. In fact, Rathbun went further than O'Neill's mere possession, since he actually deployed the firebomb outside Ruth's House, which houses a large number of elderly people (at a time when such facilities are under siege from the mounting of the COVID pandemic), and actually attempted to detonate it by lighting the Christian proselytizing pamphlet.

Similarly, Rathbun's personal circumstances are far more troubling than O'Neill's – he has a longer and more serious criminal history; suffers from serious illegal drug abuse; engaged in bizarre behavior just the month prior; and was fired from his employment for theft. The Magistrate Judge determined that Rathbun would be safe at home with his parents, but the Court here should reject that finding, as both the Magistrate Judge and the District Court did in in *O'Neill*: "Defendant also argued to Judge Scott that his mother would be an adequate custodian, if released. The Court disagrees. Defendant already resided with his mother at the time of the incident when he was allegedly constructing destructive devices and drinking alcohol on a regular basis in the garage of his mother's residence." *Id.*

Lastly, the Court should recognize, as the *O'Neill* court did, that the mere possession of such a device is inherently dangerous and warrants detention. *Id*. at 437-38 (citing *United States v. Dodge*, 846 F.Supp. 181, 184 (D.Conn. 1994) (finding the "mere possession of pipe bomb presents "a 'substantial risk' of physic"al injury to others.") and *United States v. Jennings*, 195 F.3d 795, 798 (5th Cir. 1999) (holding possession of an unregistered pipe bomb, by its very nature,

3

creates a substantial risk of violence."); *see United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (stating that "pipe bombs are not typically possessed by law-abiding citizens for lawful purposes").

Other courts have detained defendants in similar or less egregious circumstances, where (unlike here), the defendant did not deploy or seek to detonate the device. *See, e.g.*, *United States v. Miftakhov*, No. 14-mj-8, 2014 WL 808818 (W.D.Penn. Feb. 28, 2014) (detaining defendant charged with unlawful possession or making of an unregistered destructive devices, which were found in his bedroom, and stating "It was the manufacturing and possession of these devices that constituted the danger: detonation could have occurred unintentionally in the immediate area of other persons thereby causing serious injury to them."); *United States v. Colon Osorio*, 188 F.Supp.2d 153, 154 (D.P.R. 2002) (detaining defendant based upon his possession of a pistol and a homemade explosive device and stating "Neither device serves any useful peaceful purpose to the average ordinary, law abiding civilian. To the contrary, both are weapons designed to effectively cause immediate serious bodily harm or death.").

Here, there are no conditions, including those set by the Magistrate Judge, that can assure the safety of the community. As the district court explained in reversing the Magistrate Judge's release of the defendant in *United States v. Hersom*, No. 07-33-P-H, 2007 WL 1306441, *1 (D.Me. May 2, 2007):

> The Magistrate Judge tried admirably to craft conditions that would minimize the risk this defendant poses to the community. The defendant's wife as a third-party custodian will not suffice; he was living with her when the arson occurred. Electronic monitoring and a prohibition of contact with co-conspirators will not suffice; the arson occurred within minutes of his leaving his residence (while on probation) in December; one of the people (a juvenile) who was involved lives in the same building or at best is moving to a location only 2 or 3 buildings away; the defendant has no job prospects and would be at home with time on his hands when not babysitting his

> wife's children. I conclude that electronic monitoring cannot reasonably assure that there will be no recurrence of the stupidity or malevolence that produced the arson . . . .

As the court in *United States v. Mieses-Casiano*, 161 F.Supp.3d 166, 170 (D.P.R. 2016) similar noted when reversing the Magistrate Judge's release order for a defendant with no criminal history who was charged with possessing a machine gun:

> Defendant's mother — the proposed third-party custodian — testified that she would ensure defendant complies with conditions of release, becoming his shadow in every way. The court does not doubt the sincerity of her words or her interest in her son's wellbeing. But as was pointed out during the *de novo* hearing, she is disabled, and defendant was residing with her when he decided to embark on the course of conduct that led to his arrest.

### The Impact On Victims

As the Victim Impact Statements submitted by personnel for Ruth's House and its operator, JGS LifeCare, make clear, the defendant's actions provoked deep fear and shock, highlighting the dangerousness of his release for them and the community.

As the JGS Lifecare Director stated:

> JGS Lifecare is under attack. Attack from a silent virus that has invaded our walls intended to protect our most vulnerable population, our frail and sick elders. []

> And now JGS Lifecare is under a premeditated and deliberate attack, from a man filled with hate and venom who consciously wants to kill the Jews who we care for, together with the people of all faiths and backgrounds who we care for. John Rathbun's violent attempt to ignite an explosive device in front of Ruth's House has instilled shock and additional fear in the minds and hearts of our residents, staff, and their families. []

> Our staffs, already under tremendous mental stress, now fear for their lives as they come to work. Our residents, already fighting for their lives against COVID-19, now are in fear of their lives from a man filled with hate with the audacity to take action to kill because of that hate, and others like him.

Similarly, another person wrote: "As staff fights COVID-19 they do not need to fight constant fear of being physically harmed.  Residents, staff, and their families need as much peace, reassurance, and support as can be provided to them during these tragically difficult times. []  The accused has caused unimaginable fear and insecurity on the part of residents and staff of JGS Lifecare, family members of staff, and residents, and neighbors in the Springfield/Longmeadow community."

Lastly, yet another person stated:  "I am shocked and dismayed that Michael Rathbun was let out on bail.  [] In today's day and age with anti-Semitic crimes on the rise, it is irresponsible to allow such a man to be out on the streets."

These statements reflect the very real danger that they correctly perceive from the defendant's release on any conditions.

Conclusion

For the preceding reasons, the Government respectfully requests that the defendant be detained pending his trial.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    /s/ Steven H. Breslow
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically

6

to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:   */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated:  April 17, 2020