**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 20-CR-30018-MGM** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
EVIDENCE UNDER FED. R. EVID. 401

The United States of America, by and through its counsel, Andrew E. Lelling, United States

Attorney for the District of Massachusetts, Steven H. Breslow, Assistant United States Attorney,

and Risa Berkower, Trial Attorney, United States Department of Justice (the "Government"),

respectfully moves this Court *in limine* to find admissible, under Fed. R. Evid. 401(a), 402, and

403, evidence concerning a religious pamphlet that was used in this case as a wick that was part

of an incendiary device placed at a Jewish charitable organization.  Specifically, the government

moves for an order permitting introduction of evidence regarding:  the distribution and use of the

pamphlet in the Springfield area during proselytizing events involving the defendant's parents; the

provision of proselytizing material to the defendant by his mother; and the ties between the

defendant's family and the Jewish charitable organization where the device using the pamphlet-

wick was placed.

This evidence is admissible to provide circumstantial evidence of the defendant's identity

as the perpetrator of these offenses, to demonstrate the defendant's motive for committing the

charged crimes, to provide essential background and context for the defendant's offense, and to

rebut anticipated defense arguments, including the defendant's alibi defense, which he has noticed

pursuant to Fed. R. Crim. P. 12.1(a)(2).  The Government seeks this ruling in anticipation that the defense will move to exclude this evidence under Fed. R. Evid. 401(a).  Because this evidence is relevant, otherwise admissible, and not unduly prejudicial, this motion should be granted.

1.    Background

a.    The defendant's charges

On June 23, 2020, a Grand Jury charged the defendant with two offenses related to the placement of an incendiary device at the entrance to Jewish Geriatric Services Lifecare, Inc. ("JGS"), a non-profit organization located at 770 Converse Street in Longmeadow, Massachusetts. The first count charged the defendant with Attempt to Transport and Receive, and Transportation and Receipt of, an Explosive in violation of 18 U.S.C. §§ 844(d) and 2, and the second count charged him with Attempt to Damage and Destroy Buildings, Vehicles, and Real and Personal Property by Fire and Explosive in violation of 18 U.S.C. §§ 844(i) and 2.

The Grand Jury also charged in a Special Finding that the defendant intentionally selected JGS, its property, its employees, and its residents as the object of the charged offenses because of the actual and perceived race, religion, national origin, and ethnicity of any person, pursuant to U.S.S.G. § 3A1.1(a).  Under the relevant Sentencing Guideline provision, the Government must prove this allegation beyond a reasonable doubt to the trier of fact.  U.S.S.G. § 3A1.1(a).

b.    JGS

JGS's stated mission is to improve the physical, spiritual, and emotional health of individuals and families by providing a comprehensive range of health, education, and social services guided by Jewish traditions and values. The JGS Longmeadow campus consists of several different facilities, all of which provide health care and housing to elderly people of all faiths.  One of those facilities, Genesis House, provides more than 100 rentals of affordable, federally

subsidized housing for seniors.

The JGS campus is located within one square mile of several other Jewish facilities, including three Jewish temples, a Jewish private school, and a Jewish Community Center, and is an approximately five-minute drive from the defendant's home in East Longmeadow.

### c.   The discovery of the incendiary device

On the morning of April 2, 2020, a concerned citizen in Longmeadow called 911 after observing a suspicious object near the JGS entrance, approximately fifty yards from the nearest building, Genesis House.[1]  When the Longmeadow Police and Fire Departments responded they located a yellow diesel fuel can with a paper wick stuffed into the neck of the can.  The officers smelled the odor of gasoline from the can and saw that the paper wick was charred, indicating that someone had tried to ignite the wick and the gasoline inside the can.

When officers removed the paper wick, they discovered that the paper that had been used was a Christian proselytizing pamphlet.

The officers collected the device as evidence and identified bloody fingerprint stains on the paper wick and on the handle of the diesel can.  The Massachusetts State Police Crime Laboratory (the "MSP Crime Lab") examined the DNA on both the wick and the can and identified a database match to the defendant's DNA, which had been previously collected based upon an unrelated crime.

### d.   The search of the defendant's home; the defendant's interview; and the defendant's DNA match

On April 15, 2020, law enforcement officers executed search warrants at the defendant's

---

[1] The affidavit in support of the defendant's Criminal Complaint mistakenly identified this building as Ruth's House.

home, where they met the defendant and his parents, Jeffrey and Sheila Rathbun ("Jeffrey" and "Sheila").   The officers observed that the defendant's hands had numerous cuts or wounds in various states of freshness, including an open wound on his right thumb.

The defendant waived his *Miranda* rights and agreed to an interview.   The defendant admitted that he routinely drove on Converse Street past the Jewish school in Longmeadow, but he claimed to be unfamiliar with the Jewish nursing home complex where the device had been located.   The defendant maintained this assertion even after agents showed him a map of the area with an "x" marking the location where the device was placed.   The defendant also claimed that he had not left his house for the past two weeks because of the COVID-19 pandemic.   Lastly, the defendant disclaimed any personal interest in religion, but stated that Sheila was active in a local church and distributed Christian proselytizing pamphlets.

In a separate interview, Sheila stated that she printed her own pamphlets to distribute to the public, but that she did not recognize the pamphlet that was found in the incendiary device.   In the kitchen, agents located a different pamphlet designed to help guide Christians in converting Jewish persons to Christianity.   Agents searched Sheila's car, and located numerous copies of other proselytization materials inside.

Pursuant to a warrant, officers obtained a buccal swab from the defendant.   On April 8, 2020, the MSP Crime Lab compared the defendant's buccal swab with the bloodstains on both the fuel can and the pamphlet, and concluded the defendant's DNA was a 1-in-568 octillion match to each.[2]

Agents also seized the defendant's cell phone and Sheila's laptop computer.   A forensic

---

[2]   One   octillion   is   a   number   that   contains   27   zeros,   and   is   written   as 1,000,000,000,000,000,000,000,000,000.

examination of the defendant's cell phone, including voicemail and text messages, and cell site location records for the defendant's cell phone, revealed that - contrary to the defendant's claim that he had not left his house for two weeks before the fire - the defendant had left his home and drove around the Springfield area in Sheila's car during the early morning hours of April 2, 2020 leading up to the discovery of the incendiary device. As set forth below, the defense has raised an alibi defense, and is expected to base this alibi in part upon this evidence.

e.      The identification of the defendant's pamphlet and its ties to his family

The charred paper wick was comprised of several pages of Christian proselytizing material that appeared to have been torn from a pamphlet containing other pages. The FBI recently determined that pages were taken from a pamphlet entitled "Steps to Peace with God," which is published and distributed by Billy Graham Evangelical Association ("BGEA"), based in Charlotte, North Carolina.

According to BGEA witnesses, BGEA publishes and distributes this pamphlet for use in counseling individuals who are seeking to establish a relationship with God and to commit to the Christian faith. The physical pamphlets are manufactured in South Carolina. In the spring of 2019, BGEA held a series of events in the Springfield area, culminating in a large event at the Big E Festival in West Springfield on May 25, 2019, as part of the organization's Northeast Tour. During the runup to the Big E event, BGEA hired several local pastors, including the pastor of the Rathbuns' church, as paid contractors to conduct outreach and to help host a series of kick-off events, including events at an Agawam church and the Basketball Hall of Fame. BGEA staff distributed copies of the *Steps to Peace with God* pamphlet during several events designed to recruit counselors for the Big E event. At the Big E event, Sheila and Jeffrey registered for a T-shirt giveaway and provided their contact information, including their home address (where the

defendant also lived) and e-mail address.  From June 19, 2019 to April 15, 2019, BGEA e-mail or mailed to their home a series of twenty-three prayer letters and other religious materials.

According to another witness, the Rathbuns' pastor served as a paid coordinator for the Springfield area events, and he attended the events at the Agawam church, the Basketball Hall of Fame, and the Big E.  Sheila volunteered as the pastor's secretary and worked with him to plan the BGEA Northeast Tour.  Among other things, Sheila (and Jeffrey) helped the pastor contact local church organizations and mailed flyers advertising the kick-off events to community members.  Sheila also attended, at least, the events at the Basketball Hall of Fame and the Big E.  The Rathbuns' pastor recognized the *Steps to Peace with God* pamphlet as part of the Northeast Tour materials distributed by BGEA, and he believed that it was distributed at the Big E event.[3]

According to a forensic examination, Sheila's laptop contained a Save the Date flyer for the BGEA kickoff event at the Hall of Fame on March 5, 2019 and a list of religious community contacts entitled "HBC Meeting for Franklin Graham 2-21-19."

According to the defendant's eighteen-year-old daughter, who lived with the Rathbuns and the defendant at their East Longmeadow home, the *Steps to Peace with God* pamphlet looked very familiar and appeared very similar to those that she had seen at HBC.  She recognized one section of the pamphlet, which she believed she had seen in other pamphlets either in her house or at her family's church, but she did not specifically recognize the entire pamphlet.   She recounted that Sheila frequently took pamphlets and other religious material from church or religious events and gave them to both the defendant and her.  Sheila frequently tried to get the defendant involved in church because she believed that the defendant needed to find God.

---

[3] The pastor also thought that he might have kept some of these pamphlets at his church, although he could not locate any at the time of his FBI interview in September 2020.

   f.  <u>Ties between JGS, Genesis House, and the defendant's family</u>

As set forth above, during his interview on April 15, 2020, the defendant claimed to be unfamiliar with JGS even though the JGS campus is located approximately a five-minute drive from the defendant's home, is situated on a street that the defendant admitted to driving down routinely in his daily life, and even after FBI agents showed him a map with an "x" marking the spot along the street where the device was placed.

However, according to representatives of Carr Property Management ("Carr PM"), which manages Genesis House for JGS, Sheila has been a longtime employee of Carr PM (previously as a comptroller and currently as a part-time accountant).  Additionally, according to Carr PM records, Sheila's mother (and the defendant's grandmother), Sheila Tipton ("Tipton"), lived at Genesis House from approximately 2003 until in 2010, when she died.  According to Sheila, she and the defendant visited Tipton at Genesis House on more than one occasion.

   g.  <u>The defendant's alibi defense</u>

On August 28, 2020, the defendant filed a Notice of Alibi (D.52) pursuant to Fed. R. Crim. P. 12.1(a)(2).  Through this Notice, the defendant asserted that he did not commit the charged crimes because he was not present at the scene of the crime at the time the charged offenses occurred.  Based on this Notice, the Government anticipates that the defendant will assert at trial, though jury addresses, cross-examination of Government witnesses, and possibly through defense witnesses, that the Government has not proven the defendant's identity as the person who built and placed the incendiary device outside of JGS.

   2.  <u>Evidence of ties between the defendant's family and the *Steps to Peace with God* pamphlet and JGS should be admitted</u>

The Government anticipates that the defense will move to exclude all of the evidence

outlined above by claiming that it is not relevant under Fed. R. Evid. 401(a) because it does not directly prove an element of the charged offenses. Because this evidence provides important circumstantial proof of the defendant's motive and identity as the perpetrator—a central question in any criminal case, and which the defendant has directly challenged here through his Notice of Alibi—this evidence should be admitted. In addition, the First Circuit has explicitly rejected a narrow interpretation of Rule 401 to permit only evidence that directly proves an element of the offense. Accordingly, because this evidence is highly relevant and is not excludable as unduly prejudicial under Rule 403, the Government respectfully requests a ruling *in limine* permitting the introduction of this evidence.

"Generally, all relevant evidence is admissible" at Federal trials. *United States v. Flemmi*, 402 F.3d 79, 86 (1st Cir. 2005) (citing Fed. R. Evid. 402 ("Relevant evidence is admissible.")). Evidence is relevant if "it has <u>any tendency</u> to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a) (emphasis added). The First Circuit has explained that this standard is broad, and evidence that provides background information, or which provides context to explain the Government's theory of the case, is relevant, admissible evidence. *Flemmi*, 402 F.3d at 87 (citing *United States v. Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) ("To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.")). That the evidence is circumstantial is irrelevant in this analysis; indeed, "the government's proof may lie *entirely* in circumstantial evidence." *United States v. Keene*, 341 F.3d 78, 83 (1st Cir. 2003) (quotation marks omitted); *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994) ("The law is long since settled that the prosecution may prove its case without direct evidence of a defendant's guilty knowledge

so long as the array of circumstantial evidence possesses sufficient persuasive power.").

In addition, this broad view of relevance means that evidence "that pertains to a chain of events forming the context . . . and set-up of the crime, helping it to complete the story of the crime on trial" is admissible, even if that evidence does not directly establish an element of the charged offenses.  *United States v. Charles*, 456 F.3d 249, 257 (1st Cir. 2006) (quotation marks omitted); *Flemmi*, 402 F.3d at 87 (citing *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988) ("[T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.")); *see United States v. Page*, 521 F.3d 101, 106-07 (1st Cir. 2008) (affirming trial court's admission of evidence used to establish background and context).  Where evidence otherwise satisfies the Rules of Evidence, relevant evidence may be excluded only if it is unduly prejudicial—meaning, "its probative value is substantially outweighed by the danger of unfair prejudice."  *See Flemmi*, 402 F.3d at 87; Fed. R. Evid. 403.

Here, the evidence at issue is highly relevant because it provides circumstantial evidence concerning a crucial question in this case, which the defendant himself has put squarely at issue: his identity as the perpetrator of the charged offenses.   This evidence will also provide necessary context and background information that explains this causal chain.  Specifically, this evidence will establish a link between the defendant and the crime, and will offer evidence of his motive, by explaining where the wick in the incendiary device came from, the intended purpose for which the *Steps to Peace with God* pamphlet is used, the distribution of the pamphlet at BGEA events in the Springfield area, the involvement of the defendant's parents in those events, the possession of similar religious material by Sheila in the defendant's home and in her car (which the defendant used during the early morning hours of April 2), the frequent provision of such religious material

by Sheila to the defendant, and the connections between the defendant's family (and the defendant himself) to JGS and Genesis House.

All of this evidence, taken together, establishes a link between the defendant and the incendiary device that more than meets Rule 401's minimal threshold to prove the defendant's identity as the person who assembled and placed the device at JGS. Indeed, based on the defendant's Notice of Alibi, the Government anticipates that the defense will assert that there is no connection at all between the defendant, the device, and JGS. This evidence is therefore necessary to provide a basis for the jury to determine why the defendant's bloodstains wound up on the pamphlet (and the fuel can in which the pamphlet was inserted), as well as the context necessary for the jury to understand those connections. This evidence therefore meets the Rule 401(a) standard of relevant evidence, and should be found admissible.

This evidence also helps establish the defendant's motive, which is charged separately in the indictment's Special Finding. The Government's proposed evidence will explain the significance of the wick's pamphlet pages, which BGEA intends for use in counseling individuals to become Christian. It will also explain that the defendant, who has a longstanding heroin addiction, was regularly given proselytizing materials by his mother and encouraged to find God. Here, by using pages torn from *Steps to Peace with God* to build an incendiary device, placing that device outside a Jewish facility, and lighting the pamphlet on fire, the defendant expressed strong views about religion.

At the same time, there is no undue prejudice to the defendant from this evidence, as none of it involves bad acts by the defendant or anyone else that could risk improperly inflaming the jury. Accordingly, this evidence is relevant and admissible under Rules 401(a), 402, and 403.

Moreover, this evidence confronts a number of defenses that the Government anticipates

that the defense may assert at trial in addition to his alibi defense, including that: the defendant had no personal connection to the wick/pamphlet, the fuel can, or to JGS; his blood was on the wick/pamphlet and the fuel can because he could have handled these items while he was employed doing odd jobs such as trash removal; he was framed by some other individual who assembled and placed the device; he was not religious and did not engage in proselytizing; and the Government has not established any evidence that the defendant had access to these materials or motive to use them in an incendiary device placed at JGS.

Given these anticipated defenses, evidence that explains the origin of the paper wick, the complete content and purpose of the *Steps to Peace with God* pamphlet, its distribution and use in the Springfield area during the BGEA Northeast Tour and the involvement of the defendants' parents in the BGEA Northeast Tour, the possession of similar religious material by Sheila, the provision of such religious material by Sheila to the defendant, and the connection between the defendant's family and JGS, is all relevant evidence that will be necessary to rebut these arguments from the defense, and to provide the jury with a complete picture of the chain of events that led up to this crime.

Finally, to the extent that the Government must prove an interstate nexus for Count 2, which charges a violation of 18 U.S.C. § 844(d), the manufacture of the *Steps to Peace with God* pamphlet in South Carolina and its subsequent distribution in Massachusetts by the BGEA provide proof of an element of the charged offenses.

In sum, because this evidence far exceeds the minimal threshold of "any tendency" to prove facts of consequence in this case — in particular, the essential questions of the defendant's identity as the perpetrator of this crime and the motive charged in the Special Finding— and because it will be necessary to provide the jury with essential context and background, to prove the interstate

11

nexus of this offense, and to rebut likely arguments by the defense that would otherwise mislead the jury, the Court should find this evidence admissible.

3. <u>Conclusion</u>

For the foregoing reasons, the Government respectfully requests that Court rule *in limine* that the evidence outlined in this motion is relevant and admissible under Fed. R. Evid. 401(a), 402, and 403.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Steven H. Breslow*
  STEVEN H. BRESLOW
  (NY2915247)
  Assistant U.S. Attorney
  300 State Street, Suite 230
  Springfield, MA 01105
  413-785-0330
  steve.breslow@usdoj.gov

By: */s/ Risa Berkower*
  RISA BERKOWER
  (NY4536538)
  Trial Attorney
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, D.C. 20530
  202-305-0150
  Risa.Berkower@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically

to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:     */s/ Steven H. Breslow*
        STEVEN H. BRESLOW
        Assistant U.S. Attorney

Dated:  October 13, 2020