**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 20-CR-30018-MGM** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S MOTION IN LIMINE TO ADMIT
EVIDENCE REBUTTING DEFENSE ARGUMENTS

The United States of America, by and through its counsel, Andrew E. Lelling, United States Attorney for the District of Massachusetts, Steven H. Breslow, Assistant United States Attorney, and Risa Berkower, Trial Attorney, U.S. Department of Justice (the "Government"), respectfully moves this Court *in limine* for a ruling that, if the defense suggests that there is no explanation for the defendant to have placed the incendiary device at issue in this case, or if the defense attempts to portray the defendant as a law-abiding person, then the Government will be permitted to introduce rebuttal evidence concerning the defendant's erratic, volatile, and drug-induced behavior prior to the charged offenses.

The Government does not plan to introduce evidence of this behavior in its case in chief. However, in anticipation of possible defense theories, arguments, and evidence that may create a misleading impression about the defendant's past conduct and character, the Government seeks a ruling *in limine* to allow for appropriate rebuttal evidence to avoid misleading the jury.

1.    <u>Background</u>

a.    <u>The defendant's offenses</u>

On June 23, 2020, a Grand Jury charged the defendant with two offenses related to the April 2, 2020 placement of an incendiary device at the entrance to Jewish Geriatric Services Lifecare, Inc. ("JGS"), a Jewish-run facility that provides assisted living, nursing care, and low-income housing for seniors in Longmeadow, Massachusetts.  Count One charges the defendant with Attempt to Transport and Receive, and Transportation and Receipt of, an Explosive in violation of 18 U.S.C. §§ 844(d) and 2, and Count Two charges him with Attempt to Damage and Destroy Buildings, Vehicles, and Real and Personal Property by Fire and Explosive in violation of 18 U.S.C. §§ 844(i) and 2.

On the morning of April 2, 2020, a concerned citizen called 911 after observing the incendiary device near a sidewalk at the entrance to JGS's campus.  Close inspection of the device by law enforcement officers determined that it was a yellow diesel fuel can, partially filled with gasoline, with a paper wick stuffed into the neck of the fuel can.  The paper wick was charred, indicating that someone had tried to light it on fire.  The paper wick was composed of pages from a Christian proselytizing pamphlet used to counsel individuals who want to convert to Christianity. Officers found bloody fingerprints on both the paper wick and the fuel can, and later DNA analysis matched the stains on both the wick and the can to the defendant, a 1 in 568.2 octillion match.[1]

On April 15, 2020, the FBI and local law enforcement officers executed search warrants at the defendant's home, where they met the defendant and his parents, Jeffrey and Sheila Rathbun ("Jeffrey" and "Sheila").  The officers observed that the defendant's hands had numerous cuts or

---

[1]    One octillion is a number that contains 27 zeros, and is written as 1,000,000,000,000,000,000,000,000,000.

wounds in various states of freshness, including an open wound on his right thumb.

The defendant waived his *Miranda* rights and agreed to an interview.[2]  The defendant admitted that he routinely drove on Converse Street past the Jewish school in Longmeadow to go to a methadone clinic, but he claimed to be unfamiliar with the Jewish nursing home complex where the device had been placed, even after agents showed him a map of the area with an "x" marking the location of the device.  The defendant also claimed that he had not left his house for the past two weeks because of the COVID-19 pandemic.  The defendant disclaimed any personal interest in religion, but stated that Sheila was active in a local church and distributed Christian proselytizing pamphlets.  Lastly, the defendant stated that only used the Internet to search for work, view pornography, and use a dating app called "Bumble."

With respect to his drug use, the defendant first claimed he had not taken drugs in close to a month and next claimed that he had used all his drugs two weeks ago and had not used since then.  When asked if he would be willing to take a drug test, the defendant stated that he had "scraped the bottom of the bag" last night.  When asked why he kept changing his account of his drug use, the defendant responded, "What, am I supposed to tell you my whole drug history?"

        b.       <u>The defendant's recent erratic conduct</u>

           i.       <u>The baseball bat incident</u>

Also during the defendant's interview, he stated that approximately one week earlier, he had a falling out with a friend who was also a drug user.  During this incident, the friend arrived at the defendant's home, and the defendant ran out of his house and smashed the friend's car with a baseball bat.

---

[2] The Government expects to offer these statements in its case in chief as, among other things, falsely exculpatory statements that demonstrate his consciousness of guilt.

3

According to the friend, who believed the incident took place in late March, he had recently argued with the defendant over a woman.  The friend arrived at the defendant's house, but the defendant's mother said that he was asleep.  The friend walked back to his car to leave.  Suddenly, the defendant ran out of the house with a baseball bat and, without provocation, started smashing in his friend's car with the bat.  The defendant later agreed to pay for the damage.

According to text messages that the defendant sent the friend:

(1)      On or about March 23, 2020, the defendant told the friend: "[Y]ou still running your coward piece of shit scummy ass mouth I mean what the hell is our daughter going to think dude I mean talking people that mean they can look at my criminal history you dumb fuck you're the idiot with the gun problems not me I mean what the fuck is wrong or you are you 12 I mean <u>do we need another baseball bat incident [friend] you just let me know</u>."

(2)      On or about April 2, 2020 at 8:41 p.m., the defendant sent the friend a photograph of apparent drugs (a white powdery substance) and paraphernalia.

(3)      Shortly after midnight on or about April 3, 2020, the defendant sent a series of texts that indicated the defendant had left the previous several nights:  "if your up at 6 and want cash call me to meet at drop . . . few spots depot to start have black . . . been doin it alone past 3 night I'm leaving soon."

    ii.      <u>The Chicopee incident on March 3, 2020</u>

Also during the defendant's interview, he admitted that he was involved in an incident at

the Quality Inn in Chicopee on March 3, 2020, stating that he was out of his mind on Xanax, pot, dope, and alcohol, and admitting that he had stayed in the room with a prostitute and had damaged a screen in the hotel room.[3]

According to a report of the incident by the Chicopee Police Department ("CPD"), on the evening March 3, 2020, the defendant had called the police to report that there were three men inside his van, which was parked in the hotel parking lot. When the police arrived, they noticed that the van was unoccupied, locked, and had no signs of forced entry. The defendant told police that he saw two black men and a white man inside his van, which he said was unlocked; the men left the van and walked away; and a while later they returned and re-entered the van. When asked why he did not lock the van after the three men left and why he had not called the police, he could not provide a logical answer. When asked why the defendant told the police there were three men in the van even though it was empty as the police approached it, he also could not answer.

iii.    <u>The defendant's civil restraining orders and abuse prevention act</u><br><u>violations</u>

According to the defendant's criminal history record, on or about June 18, 2017, the defendant received a civil restraining order directing him to refrain from abusing and contacting with ex-wife and her two young children. On or about November 30, 2017 the defendant received a similar civil restraining order that expired would have expired on December 7, 2020.[4]

---

[3] Photographs found on the defendant's iPhone, seized during a search of his home on April 15, 2020, confirm that he was at the motel with a woman, and that they had narcotics with them in their room.

[4] The defendant also received civil restraining orders relating to two other women on December 13, 2006 and April 6, 2009.

On February 26, 2019, the defendant was arraigned in Palmer District Court on two counts of violating the Abuse Prevention Act, and on April 12, 2019, the defendant's charges were continued without a finding and he commenced a period of supervised probation that was to end on April 23, 2020 (had he not yet been charged with defendant's instant offense).

According to the defendant's ex-wife, she was married to him from 2015 until their divorce in 2017. Shortly after they were married, she noticed the defendant heavily dependent on drugs, specifically heroin, and alcohol. When the defendant was using drugs, he would become very angry and erratic, displaying crazy and destructive behavior, and he often had no recollection the next day. More than once, the defendant told her he was going to burn her house down. Although she had a current restraining order against him, he continued to contact her through numerous fake Facebook profiles, including in the months leading up to the April 2, 2020 offenses. The Government has already obtained responses from Facebook for twelve of these accounts, and expects to obtain search warrants for many others soon.

2.      The Government should be permitted to use this evidence to rebut certain defenses

The Government does not currently anticipate introducing this evidence in its case in chief. However, the Government will seek to use this evidence should the defense assert at trial — either when addressing the jury, by implication through cross-examination of government witnesses, or through any defense witnesses — that there is no explanation for why the defendant placed the incendiary device at JGS, or that the defendant is a law abiding citizen who would not commit the charged crimes. If the defendant advances such theories, the Government will seek to admit these incidents to rebut an incorrect factual inference: in fact, the defendant is a habitual drug user who engaged in irrational behavior and unprovoked violence in the weeks leading up to this offense. Accordingly, the Government now seeks a ruling from the court *in limine* to admit this evidence

if the defendant opens the door to it by advancing these theories.

Where a defendant creates an inaccurate factual inference, either through the affirmative presentation of evidence or by cross-examination of government witnesses, the defendant opens the door to the introduction of contradictory evidence, regardless of whether that evidence would otherwise be admissible.  *See, e.g., United States v. Tetioukhine,* 725 F.3d 1, 9-10 (1st Cir. 2013) (permitting introduction of defendant's otherwise inadmissible prior conviction to rebut testimony portraying defendant as a law-abiding citizen); *United States v. Balthazard*, 360 F.3d 309, 317 (1st Cir. 2004) (affirming introduction of evidence of defendant's unrelated criminal activity after defense suggested, during cross-examination of case agent, that defendant had only limited prior contacts with law enforcement); *see also Michelson v. United States*, 335 U.S. 469, 479 (1948) (stating that "[t[he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.").

This type of rebuttal evidence is governed by Federal Rules of Evidence 402 and 403, which provide for its admission so long as it is relevant and its probative value is not substantially outweighed by undue prejudice.  *See United States v. Landry*, 631 F.3d 597, 605 (1st Cir. 2011) (holding that where prior convictions are used to rebut a misimpression created by the defense, Rule 402 and 403, rather than Rule 609, govern).  Accordingly, so long as this type of evidence is relevant to rebut a factual misimpression, and is not substantially outweighed by undue prejudice, it should be admitted.

Here, the Government does not intend to use evidence of the defendant's erratic behavior in its case-in-chief.  However, should the defense suggest that there is no explanation for why the defendant would have placed an incendiary device at JGS, or if the defense suggests that the

defendant is a law-abiding citizen who would not commit such acts, these factual misimpressions open the door to these incidents. These incidents show that, in the weeks leading up to the charged crimes, the defendant engaged in erratic, volatile, drug-induced behavior. This evidence tends to rebut the suggestion that there is no explanation for the defendant's placement of the device, as it shows that the defendant engaged in impulsive and seemingly irrational behavior shortly before the offense. This evidence also negates any suggestion that the defendant would not commit this type of crime because he is law-abiding. In light of this, if the defense creates these inaccurate inferences about the defendant's recent past conduct, this evidence will be relevant and necessary to correct any misimpression and to avoid misleading the jury, and should therefore be ruled admissible for that purpose.

3.      Conclusion

For the foregoing reasons, the Government respectfully requests that Court grant this motion *in limine*.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

By:    */s/ Risa Berkower*
RISA BERKOWER
(NY4536538)

Trial Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
202-305-0150
Risa.Berkower@usdoj.gov

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated:  October 13, 2020

9