UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 20-30018-MGM |
| | ) | |
| JOHN RATHBUN | ) | |

**MOTION TO EXCLUDE EXPLOSIVE DEVICE TESTIMONY AND
REQUEST FOR DAUBERT HEARING**

Defendant, John Rathbun, by and through counsel, respectfully moves, pursuant to Federal Rules of Evidence 104(a), 402, 403, 702, 703, and the Fifth and Sixth Amendments to the United States Constitution, to exclude the government's proposed expert testimony opining that the fuel container left on Converse Street in Longmeadow (1) could cause property damage, personal injury, or death, and (2) could be utilized as a weapon. Defendant submits that, at a minimum, the Court must schedule a *Daubert* Hearing to determine the admissibility of the proposed testimony.

As grounds therefore, defendant states: (1) there is no reliable scientific basis for this proposed testimony, and thus the testimony is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); (2) the testimony is inadmissible under the 2000 amendments to Rule 702 in that (a) the testimony is not based upon sufficient facts or data, and (b) the testimony is not the product of reliable principles and methods; (3) the subjective conclusion, unsupported by any analysis, that the fuel container *could* cause damage or *could* be used as a weapon is so weak as to lack any probative value; and (4) any weak probative value of the proposed testimony is also substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and by considerations of undue delay, waste of time, and needless presentation of cumulative

evidence, and is thus inadmissible under Fed. R. Evid. 403. Defendant submits that, at a minimum, a voir dire hearing is required to determine the admissibility of the testimony.

## **FACTS**

The government's October 5, 2020 expert disclosure letter (*see* D.E. 70)("Gov't Letter of October 5, 2020) notices the expert testimony of FBI Supervisory Special Agent Christopher Rigopoulos, an Explosives and Hazardous Device Examiner at the FBI. According to the government, Rigopoulos will testify as follows:

- the components abandoned at the scene – container, gas, and paper - *if* properly assembled and initiated, *could* cause property damage, personal injury, and/or death;

- paper rolled and placed in the nozzle of a container *may* ignite the material by transmitting a flame from outside the container to the gasoline within; and

- the fuel container meets the "technical elements of a destructive device."

*Id.* at 4 (emphasis supplied). The government, if permitted, will go on to elicit Rigopoulos's opinion that:

the incendiary device with a partially activated fuszing [sic] system, placed in proximity to the entrance of a senior living facility, indicates that the device could be used as a weapon.

*Id.* The government's position appears to be that SSA Rigopoulos should be permitted to testify to hypothetical scenarios – *if* assembled and initiated, it *may* ignite – and then speculate that the features of the fuel container as abandoned on Converse Street meets the legal statutory definition of an "incendiary device" set forth in 18 U.S.C. § 232(5). No reasoning is found anywhere in the government's disclosure and, tellingly, there apparently has been no effort whatsoever to produce an ignition of the fuel container as it existed at the time it was abandoned. Rather, the proposed opinion relies wholly on the *ipse dixit* say-so of the examiner using a methodology with no apparent empirical support.

## ARGUMENT

### I.    THE DISTRICT COURT'S GATEKEEPING RESPONSIBILITY

"Testimony emanating from the depth and scope of specialized knowledge is very impressive to a jury. The same testimony from another source can have less effect." *Ake v. Oklahoma*, 470 U.S. 68, 82 n.7 (1985) (citation omitted). Consequently, when a party moves to introduce scientific, technical, or specialized expertise this Court is obligated, under Federal Rules of Evidence 104(a) and 702, to act as a "gatekeeper" to ensure the evidence "is not only relevant, but *reliable*." *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579, 589 (1993) (emphasis added); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (expanding *Daubert's* holding to expertise deemed "technical" or "specialized knowledge" under Rule 702); *General Electric Co. v. Joiner*, 522 U.S. 137, 142 (1997). In order to faithfully carry out its gatekeeping responsibility, this Court must adhere to the principles articulated in *Daubert*, *Kumho Tire*, and *Joiner*.

In *Daubert*, the Supreme Court articulated the legal framework for how non-science federal judges are to distinguish between reliable science and "science that is junky." *Kuhmo Tire*, 526 U.S. at 159 (Scalia, J., concurring). This framework entails considering five non-exhaustive factors. The first is whether the forensic "theory or technique ... can be (and has been tested)," *Daubert*, 509 U.S. at 593. Second is "whether the theory or technique has been subjected to peer review and publication." *Id.* The third factor is whether the technique has a "known or potential rate of error." *Id.* at 594. Fourth is whether there exist any "standards controlling the technique's operation." *Id.* The fifth is whether the technique is "generally accepted" by the scientific community. *Id.* These factors assist district courts in determining "whether the reasoning or methodology underlying the testimony is ... valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-593. Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence

or to determine a fact in issue." Fed. R. Evid. 702. "[A] proposed expert witness must be sufficiently qualified to assist the trier of fact, and ... his or her expert testimony must be relevant to the task at hand and rest on a reliable basis." *United States v. Diaz*, 300 F .3d 66, 73 (1st Cir. 2002); *see United States v. Monteiro*, 407 F.Supp.2d 351, 356-58 (D.Mass 2006)(Saris, J.)(proper gatekeeper role after *Daubert* requires vigilance in ensuring a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand).

The key principles of *Daubert* are incorporated in Rule 702, which permits expert testimony only if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Pursuant to Rule 702 and *Daubert*, "[r]eliability questions may concern the expert's data, method, or his application of the method to the data .... The party offering the expert must show that the method employed by the expert ... is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. . .. [A]ny step that renders the expert's analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *United States v. Nacchio*, 555 F. 3d 1234, 1241 (10th Cir. 2009) (*en banc*) (internal quotations and citations omitted). The burden, of course, is on the government to demonstrate that the proposed testimony passes muster under both *Daubert* and Rule 702. *See Monteiro, supra*, 407 F.Supp.2d at 356 ("The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."); *Daubert*, 509 U.S. at 592 n.10 (the burden of proof is set by Rule 104(a) and requires that the proponent of the evidence show by a

preponderance of the proof that the basis for the proffered expert opinion is reliable) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987)).

## II.    THE GOVERNMENT CANNOT MEET ITS BURDEN THAT THE EXAMINER'S OPINION TESTIMONY IS ADMISSIBLE

Where, as here, a witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under Daubert, that's not enough"). The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) ("[I]t will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable.").

Moreover, opinion evidence must comport with *Daubert's* and *Kumho Tire's* "task at hand" requirement. *Daubert*, 509 U.S. at 597;  *Diaz*, 300 F.3d at 73. Put another way, the question is whether the proposed testimony "fits" the premise to be testified to. *United States v. Green*, 405 F. Supp. 2d 104, 419 (D. Mass. 2005). The Supreme Court made this principle clear when it wrote:

> Contrary to respondents' suggestion, the specific issue before the court was not the reasonableness in general of a tire expert's use of a visual and tactile inspection ... Rather, it was the reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony

was directly relevant... The relevant issue was whether the expert could reliably determine the cause of *this* tire's separation.

*Kumho Tire*, 529 U.S. at 153-154 (emphasis in original). Consequently, *Kumho Tire* forces the Government to establish proof at both the general level (whether the witness's opinion is grounded in sufficient facts and data) and a specific level (whether the approach employed the expert fits a relevant goal). Both are required.

Here, the government can establish neither. The expert's first tripartite assertion – that the components abandoned at the scene *if* properly assembled and initiated *could* cause damage or injury and the paper rolled and placed in the nozzle of a container *might* ignite the material – is untethered by any facts or data, is not the result of any – let alone any reliable - principles and methods. It is nothing more than subjective *ipse dixit* testimony. Without any facts or data, the Court cannot determine whether the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Similarly, the government cannot establish the necessary "fit" between the proposed testimony and the matter at issue: whether the fuel container was deployed as a weapon in *this* case. *Kumho Tire*, 529 U.S. at 153-154. The testimony must therefore be excluded.

### III. THE CONDITIONAL NATURE OF THE TESTIMONY RENDERS IT USELESS IN ASSISTING THE JURY AND SO IT MUST BE EXCLUDED OUTRIGHT.

Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must logically advance a material aspect of the case and be sufficiently tied to that aspect so that it will assist the jury to sort out contested issues. *United States v. Mehanna,* 735 F.3d 32, 66-67 (1st Cir. 2013). In other words, expert testimony is inadmissible if it is irrelevant and unhelpful to the jury. Fed. R. Evid. 401, 702.

Here, the testimony's multiple levels of conditionality - *if* the components were properly initiated they *could* cause damage or injury because the paper rolled and placed in the nozzle of the container *might* ignite the material – is of no relevance to the facts at issue and is manifestly unhelpful. The issue for the jury will be whether (1) whether Rathbun placed the fuel container at the scene, and (2) if he did, was it with the intent that it be used as a weapon to cause damage to property and inflict harm to somebody. Given the issues to be decided, the proposed testimony, with its multiple caveats, is irrelevant, unhelpful, and indeed is fraught with undue prejudice and confusion of the issues. The testimony must therefore be excluded. Fed. R. Evid. 401, 402, 403, 702.

## IV.    AN EVIDENTIARY HEARING IS REQUIRED

Where the issues of reliability, subjectivity, relevance, fit, and unhelpfulness are all, to varying degrees, infirm as to the proposed opinion, the Court should, at a minimum, hold an evidentiary hearing to resolve this motion.

## CONCLUSION

*Daubert* and Rule 702 mandate that this Court conduct a searching inquiry of any proposed expert testimony to ensure it is reliable, relevant, and does not unduly confuse the issues. This inquiry, according to *Daubert*, should focus on such issues as reliability, subjectivity, relevance, fit, and unhelpfulness. The defendant has offered a more than sufficient basis to demonstrate that proposed testimony does not satisfy any of these factors. It is inadmissible under Rule 702 and excludable under Rule 403. The testimony and evidence must therefore be excluded.

- 8 -

JOHN RATHBUN
By his attorneys,


/s/ Timothy G. Watkins
Timothy G. Watkins
Forest O'Neill-Greenberg
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061


### CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 19, 2020.

/s/ Timothy G. Watkins
Timothy G. Watkins