**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 20-CR-30018-MGM** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
TO PROHIBIT THE GOVERNMENT FROM ADVANCING AN
AIDING AND ABETTING THEORY AT TRIAL

The United States of America, by and through its counsel, Andrew E. Lelling, United States
Attorney for the District of Massachusetts, Steven H. Breslow, Assistant United States Attorney,
and Risa Berkower, Trial Attorney, United States Department of Justice (the "Government"),
respectfully opposes defendant's Motion *In Limine* to Prohibit Government from Advancing an
Aiding and Abetting Theory at Trial (D.74).

Because it is well-settled that the Government can proceed on an aiding and abetting theory
under the circumstances presented here, the motion should be denied.

1.    Background

   a.    The defendant's charges

On June 23, 2020, a Grand Jury charged the defendant with one count of Attempt to
Transport and Receive, and Transportation and Receipt of, an Explosive in violation of 18 U.S.C.
§§ 844(d) and 2, and one count of Attempt to Damage and Destroy Buildings, Vehicles, and Real
and Personal Property by Fire and Explosive in violation of 18 U.S.C. §§ 844(i) and 2.  These
charges were based upon the defendant's April 2, 2020 placement of a homemade incendiary

device at the entrance of Jewish Geriatric Services Lifecare, Inc. ("JGS"), a non-profit organization located at 770 Converse Street in Longmeadow, Massachusetts.  The Grand Jury also charged the defendant in a Special Finding that he intentionally selected JGS, its property, its employees, and its residents as the object of the charged offenses because of the actual and perceived race, religion, national origin, and ethnicity of any person, pursuant to U.S.S.G. § 3A1.1(a).

On October 15, 2020, a Grand Jury returned a Superseding Indictment that added one count of False Statements in violation of 18 U.S.C. § 1001(a)(2).  This charge was based on the defendant's voluntary, *Mirandized* interview with a Special Agent of the Federal Bureau of Investigation ("FBI") on April 15, 2020, in which he stated that (1) he was not familiar with the location where the incendiary device had been placed; (2) he had not left his house for two weeks due to the COVID-19 pandemic; and (3) he only used the Internet to search for work, to use a dating website, and to view pornography.

   b.  <u>Facts</u>

On the morning of April 2, 2020, a concerned citizen in Longmeadow called 911 after observing a suspicious object near the entrance to JGS, which provides a range of services to seniors, including assisted living, nursing home care, and federally-subsidized affordable housing. The object was located approximately fifty yards from the JGS nearest building, Genesis House.[1] When the Longmeadow Police and Fire Departments responded they found a yellow diesel fuel can with a paper wick, consisting of a Christian proselytizing pamphlet, stuffed into the neck of the can.  The officers smelled the odor of gasoline from the can and saw that the paper wick was charred, indicating that someone had tried to ignite the wick and the gasoline inside the can.

---

[1] The affidavit in support of the defendant's Criminal Complaint mistakenly called this building Ruth's House.  Ruth's House is a different building on the JGS campus.

Initially, law enforcement had no leads to identify the person who placed the device at JGS. However, after collecting the device as evidence and examining it, officers saw what appeared to be bloody fingerprint stains on the paper wick and on the handle of the diesel can. These stains were sent to the Massachusetts State Police Crime Laboratory (the "MSP Crime Lab") for analysis. The MSP Crime Lab determined that the stains were human blood and developed a DNA profile from the stains. This DNA profile was submitted into a national DNA database, which matched the DNA from the bloody fingerprints on both the fuel can and the wick to the defendant, whose DNA was on file from an unrelated prior crime.

Based on these matches, the FBI obtained a search warrant for the defendant's home, his person, his cellular telephone, electronic devices found inside his house, and the vehicles registered to his home address. The search warrant also authorized the collection of a buccal swab from the defendant, in order to develop a complete DNA profile from him for further comparison to the DNA taken from the bloody fingerprints found at the crime scene.

On April 15, 2020, law enforcement officers executed these search warrants at the defendant's home. During this process, the officers met the defendant, his parents Jeffrey Rathbun and Sheila Rathbun ("Jeffrey" and "Sheila"), and the defendant's adult daughter, all of whom lived in the house. At the outset of their interaction with the defendant, law enforcement officers noticed that his hands had numerous cuts or wounds in various states of freshness, including an open wound on his right thumb, which they photographed. During a *Mirandized* interview, the defendant explained that his hands bled because he picked at them and admitted that he routinely drove down Converse Street (where JGS was located), although he claimed ignorance of its location on the street and that he had not left his house in the past two weeks. When asked about religion, the defendant disclaimed any personal interest in religion, but he stated that his mother

3

was active in a local church and distributed Christian proselytizing pamphlets to potential converts.

The searches yielded several items of evidence, including a different pamphlet in the kitchen that was designed to help guide Christians in converting Jewish persons to Christianity, as well as other religious material located in Sheila's car.  Pursuant to the warrants, agents also seized the defendant's cell phone and his mother's laptop computer.  A subsequent forensic examination of the defendant's cell phone as well as cell site location information for that phone established that the defendant had in fact left his home in his mother's car during the early morning hours of April 2, 2020 leading up to the discovery of the incendiary device - contrary to the defendant's claim that he had not left his house in the past two weeks.

Most importantly, on April 28, 2020, the MSP Crime Lab compared DNA taken from the buccal swab to the full DNA profile from the bloodstains on both the fuel can and the pamphlet, and concluded the defendant's DNA was a 1-in-568 octillion match to each.[2]

In addition, the Government discovered that – contrary to the defendant's claim that he was unfamiliar with the JGS location – the defendant's grandmother spent seven years living in Genesis House, the building closest to where the device was placed and the defendant's mother worked for many years for Genesis House's property manager.   Moreover, in a recorded jail call with his mother on July 25, 2020, after his mother informed him that the Government had subpoenaed her work records and his grandmother's Genesis House records, the defendant acknowledged, "Now remember, her - where she lived was right on that side, too, where the bomb was placed."

Further, the Government recently determined that pages used as a wick were taken from a pamphlet entitled *Steps to Peace with God*, which is published and distributed by Billy Graham

---

[2]   One octillion is a number that contains 27 zeros, and is written as 1,000,000,000,000,000,000,000,000,000.

Evangelical Association ("BGEA"), based in Charlotte, North Carolina, that the defendant's parents were involved with BGEA events held in 2019 in the Springfield area, and that the defendant's mother frequently provided the defendant with religious material that she obtained from church and other religious events.

According to BGEA witnesses, BGEA publishes and distributes the *Steps to Peace with God* pamphlet for use in counseling individuals who are seeking to establish a relationship with God and commit to the Christian faith. The physical pamphlets are manufactured in South Carolina. In the spring of 2019, BGEA held a series of events in the Springfield area as part of the organization's Northeast Tour, culminating in a large event at the Big E Festival in West Springfield on May 25, 2019. During the runup to the Big E event, BGEA hired several local pastors, including the pastor of the defendant's family's church (HBC), as paid contractors to conduct outreach and to help host a series of kick-off events, including events at an Agawam church and the Basketball Hall of Fame. BGEA staff distributed copies of the *Steps to Peace with God* pamphlet during several events designed to recruit counselors for the Big E event. At the Big E event, the defendant's parents registered for a T-shirt giveaway and provided their contact information, including their home address (where the defendant also lived) and e-mail address. From June 19, 2019 to April 15, 2019, BGEA e-mail or mailed to their home a series of twenty-three prayer letters and other religious materials.

The pastor at HBC told the FBI that he served as a paid coordinator for the Springfield area events, and he attended the events at the Agawam church, the Basketball Hall of Fame, and the Big E. The defendant's mother volunteered as the pastor's secretary and worked with him to plan the BGEA Northeast Tour. Among other things, the defendant's mother (and father) helped the pastor contact local church organizations and mailed flyers advertising the kick-off events to

community members.  The defendant's mother also attended, at least, the events at the Basketball Hall of Fame and the Big E.  The pastor recognized the *Steps to Peace with God* pamphlet as part of the Northeast Tour materials distributed by BGEA.[3]

According to a forensic examination of the defendant's mother's laptop, it contained a Save the Date flyer for the BGEA kickoff event at the Hall of Fame on March 5, 2019 and a list of religious community contacts entitled "HBC Meeting for Franklin Graham 2-21-19."

According to the defendant's eighteen-year-old daughter, who lived with the defendant and his parents at their East Longmeadow home, the *Steps to Peace with God* pamphlet looked very familiar and appeared very similar to those that she had seen at HBC.  She recognized one section of the pamphlet, which she believed she had seen in other pamphlets either in her house or at her family's church, but she did not specifically recognize the entire pamphlet.   The defendant's mother frequently took pamphlets and other religious material from church or religious events and gave them to both the defendant and her.  The defendant's mother frequently tried to get the defendant involved in church because she believed that the defendant needed to find God.

      c.      The defendant's alibi defense

On August 28, 2020, the defendant filed a Notice of Alibi (D.52) pursuant to Fed. R. Crim. P. 12.1(a)(2).  Through this Notice, the defendant asserted that he did not commit the charged crimes because he was not present at the scene of the crime at the time the charged offenses occurred.  Based on this Notice, the Government anticipates that the defendant will assert at trial, though jury addresses, cross-examination of Government witnesses, and possibly through defense witnesses, that the Government has not proven the defendant's identity as the person who built

---

[3] The pastor also thought that he might have kept some of these pamphlets at his church, although he could not locate any at the time of his FBI interview in September 2020.

and placed the incendiary device outside of JGS.

Despite having noticed an alibi defense, the defendant now moves to preclude the Government from arguing to the jury that he aided and abetted this offense. The defendant bases his motion on the fact that the Government has not identified a third party who committed the offense. Because it is well-settled that the Government can proceed on an aiding and abetting theory of liability even if a principal is never identified or charged, the motion should be denied.

2.      The Motion Should Be Denied

The aiding and abetting statute holds liable as a principal anyone who "aids, abets, counsels, commands, induces or procures [the] commission" of a federal crime. 18 U.S.C. § 2. The Supreme Court has explained that this means that "those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (quotation marks omitted). Aiding and abetting has two elements: (1) that the defendant "take[] an affirmative act in furtherance of the offense," and (2) that the defendant does so "with the intent of facilitating the offense's commission." *Id*. A defendant "need not have actually assisted the principal in committing each element of the crime" to be liable as an aider and abettor. *United States v. Fernandez-Jorge*, 894 F.3d 36, 42 (1st Cir. 2018).

Significantly, there is no requirement that the Government prosecute, or even identify, the principal whom the defendant aids and abets. *Id*. As the First Circuit has held, "[t]he identity of the principal need not be established, nor need the principal be convicted" to hold a defendant liable as an aider and abettor. *United States v. Campa*, 679 F.2d 1006, 1013 (1st Cir. 1982).

Other Circuits have reached the same conclusion, including the Tenth Circuit in a prosecution for arson in violation of § 844(i). *See, e.g.*, *United States v. Yost*, 24 F.3d 99, 104

(10th Cir. 1994) (affirming use of aiding and abetting jury instruction for § 844(i) charge despite the fact that there was no allegation that anyone other than the defendant was responsible for the arson); *see also United States v. Petty*, 132 F.3d 373, 377-78 (7th Cir. 1997) ("[The defendant] suggests that a necessary element of aiding and abetting is proof of whom exactly the defendant aided and abetted. We disagree. We have never required the Government even to identify the principal, much less prove it was that person whom the defendant aided and abetted."); *United States v. Branch*, 91 F.3d 699, 732 (5th Cir. 1996) ("In a prosecution for aiding and abetting a crime, the Government need not identify a specific person or group of individuals as the principal."); *United States v. Mann*, 811 F.2d 495, 497 (9th Cir. 1987) ("It is not a prerequisite to a conviction for aiding and abetting, however, that the principal be tried and convicted, or even that the principal be identified.").

A defendant may be held liable as an aider and abettor even where the principal is acquitted of the same crime. *Standefer v. United States*, 447 U.S. 10, 20 (1980) (affirming defendant's conviction where principal was acquitted, holding "[w]ith the enactment of [18 U.S.C. § 2], all participants in conduct violating a federal criminal statute are 'principals.'  As such, they are punishable for their criminal conduct; the fact of other participants is irrelevant.").

The Tenth Circuit's decision in *Yost* provides the best explanation of why the Government may proceed on an aiding and abetting theory here.  In *Yost*, the defendant was charged with arson, in violation of 18 U.S.C. §§ 844(i) & 2, for intentionally burning down his failing business to obtain insurance payments.  Circumstantial evidence established that the defendant set the fire. No one else was identified or charged as having committed the arson.  When the case went to the jury, the district court gave an aiding and abetting instruction.  On appeal, the defendant argued that he could not be held liable as an aider and abettor because there was no allegation that anyone

8

other than himself had committed the crime, and by definition he could not have aided and abetted himself. The Tenth Circuit explicitly rejected this argument. *Yost*, 24 F.3d at 104 ("[The defendant] argues that, because it was not alleged that any other specific actor was responsible for the arson, [the defendant] cannot he charged as an aider and abettor. He is mistaken."). The Court explained its reasoning:

> The [defendant] concede[s] that all of the substantive elements of the crime of arson under § 844(i) were present. Though there is no specific allegation of who besides [the defendant] might have physically committed the arson, if [the defendant] did not himself do it, it is undisputed that *someone* did. All that is required for a conviction based on 18 U.S.C. § 2 is a finding that [the defendant] aided *someone* in committing the crime.

*Id.* (emphasis in original). Because the Government proved that the charged arson happened, proof that the defendant aided in the commission of that crime was sufficient to convict him under an aiding and abetting theory.

Here, the Government seeks to proceed on the exact same aiding and abetting theory that the Tenth Circuit affirmed in *Yost*. The Superseding Indictment charges the defendant with two arson offenses (alleged as attempts as well as substantive offenses) arising from the placement of an incendiary device at JGS, or of aiding and abetting those crimes, in violation of 18 U.S.C. §§ 844(d), 844(i), and 2. The Government's evidence will prove that the § 844(d) and 844(i) offenses happened and that the defendant, at the very least, aided and abetted their commission.

The Government's evidence will also prove that: (1) the defendant's DNA matched the bloody fingerprints on both the fuel can and on the charred wick of the device found on April 2; (2) the defendant had taken his mother's car and left his home during the early morning hours of April 2 (contrary to his claim that he had not left the house in the past two weeks); and (3) the defendant regularly picked his hands to the point of bleeding and had numerous cuts or wounds on his hands on April 15 – all of which indicates that he assembled, if not placed, the incendiary

device.  The circumstantial evidence described above will also link the defendant to the pamphlet used for the wick and to JGS itself.

Consequently, as in *Yost*, the Government's evidence will prove that "someone" committed the charged arsons.  The Government's evidence will also prove that, if the defendant did not himself place the device at JGS, then he aided "someone" in doing so by supplying the *Steps to Peace with God* pamphlet for use as the wick and by assembling the fuel can and wick into an incendiary device.  Given this evidence, as in *Yost*, the defendant may be held responsible as an aider and abettor.

Moreover, the Government must be permitted to proceed on an aiding and abetting theory to rebut the defendant's alibi defense.  By noticing this defense, the defendant has asserted that he is not the person who actually placed the device at JGS.  Given the strong evidence that "someone" committed the charged crimes, the defendant cannot evade liability for the steps he took to carry out those crimes — specifically, handling both the fuel can and the wick and assembling them into the incendiary device — merely by asserting that he did not carry out the final acts of placing the device at JGS and attempting to ignite it.  *See Fernandez-Jorge*, 894 F.3d at 42 (a defendant "need not have actually assisted the principal in committing each element of the crime" to be liable as an aider and abettor).  Granting the defendant's motion would wholly undercut the very purpose of § 2: holding accountable as principals those who assist in the commission of federal crimes.  In light of this, the defendant's motion should be denied.

3.    Conclusion

For the foregoing reasons, the Government respectfully requests that Court deny the defendant's Motion *In Limine* to Prohibit Government From Advancing Aiding and Abetting Theory at Trial (D.81).

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

By:   */s/ Risa Berkower*
RISA BERKOWER
(NY4536538)
Trial Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
202-305-0150
Risa.Berkower@usdoj.gov

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:   */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated:  October 19, 2020

11