UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 20-30018-MGM |
| | ) | |
| JOHN RATHBUN | ) | |

## DEFENDANT'S MOTION FOR RELIEFT FROM MISJOINDER AND/OR SEVERANCE OF COUNT THREE

John Rathbun, the defendant in the above captioned matter, moves, pursuant to Fed. R. Crim. P. 8(a) and 14(a), for severance of counts 1-2 from count 3 of the indictment and for separate trials. As reasons therefore, Rathbun states that the addition of count 3, a charge of False Statements in violation of 18 U.S.C. § 1001(a)(2), is prejudicially joined pursuant to Fed. R. Crim. P. 8(a). The alleged false statements, made by Rathbun approximately two weeks after a fuel container was discovered on the tree line parallel to Converse street in Longmeadow, are unrelated to the issues central to counts 1-2, specifically (1) whether Rathbun placed the fuel container at the scene on April 2, 2020, and (2) if he did, was it with the intent that it be used as a weapon to cause damage to property and inflict harm. Count 3 does not share a similar character to the original two charges, nor is it based on the same act or transaction or a common scheme or plan. As joinder of the false statements charge would result in a clear and substantial prejudice toRathbun pursuant to Fed. R. Crim. P. 14(a), severance is required.

1

## FACTS

### Counts One and Two

Rathbun is charged in two counts with attempted transportation and receipt of an explosive and attempt to damage and destroy buildings and real property. (Docket No. 34). The indictment includes a request for a Special Finding that the offense was motivated by religion. These charges arise from allegations that on the morning of April 2, 2020, Rathbun placed a five gallon Scepter fuel canister, filled approximately one-third filled with gasoline, with a partially charred religious pamphlet in the nozzle of the canister, approximately 50 yards from the Genesis House on Converse street in Longmeadow, MA. *Id.*

### Count Three – False Statements

On October 15, 2020, in a Superseding Indictment, Rathbun was indicted on an additional charge of False Statements, in violation of 18 U.S.C. § 1001(a)(2). (Docket No. 82). This new charge alleges that on April 15, 2020, in an unrecorded interrogation conducted by Federal agents, Rathbun willfully and knowingly made materially false statements to FBI that: (1) he was not familiar with the location on Converse Street where the Scepter fuel canister was located; (2) he had not left his house in the past two weeks because of the COVID-19 pandemic; and (3) he had only used the Internet to search for work, to use a dating application called Bumble, and to view pornography. The government alleges that Rathbun knew these statements were false in that: (1) he was familiar with the location where the fuel can was located; (2) he had left his house during the early morning hours of April 2, 2020; and (3) he used the Internet to create numerous Facebook accounts in the names of aliases. *Id.*

2

## **ARGUMENT**

**I.     Misjoinder of Counts under Rule 8(a)**

Fed. R. Crim. P. 8(a) provides:

> The indictment or information may charge a defendant in separate counts
> with two or more offenses if the offenses charged -- whether felonies or
> misdemeanors or both -- are of the same or similar character, or are based
> on the same act or transaction, or are connected with or constitute parts of
> a common scheme or plan.

In the ordinary case, the basis for joinder under Rule 8 "should be discernible from the face of the indictment." *United States v. Natanel*, 938 F. 2d 302, 306 (1st Cir. 1991). The remedy for misjoinder is severance. *Id.*

**A.  Same or Similar Character**

Rule 8(a)'s provision for joinder of offenses that are of the "same or similar character" has been controversial at best. In *United States v. Randazzo,* 80 F.3d 623, 628 (1st Cir. 1996), the court questioned why Congress would have provided for joinder of offenses that have the "same or similar character," noting that the "same or similar" language was "drawn from earlier law without explanation," and that "about the best one can say is that in such cases the evidence of one crime is more likely to be independently admissible, on theories reflected in Fed. R. Evid. 404(b)[.]" *Randazzo,* 80 F.3d at 627 n.1.

The Second Circuit has also observed that the "customary justifications for joinder (efficiency and economy) largely disappear" when "all that can be said of two offenses is that they are of the 'same or similar character." *United States v. Halper,* 590 F.2d 422, 430 (2nd Cir. 1978).

> [T]he only time likely saved by joinder of "same or similar character" offenses is the time spent selecting a jury ... On the whole, however, the "trials" on the joined charges are distinct.  At the same time, the risk to the defendant in such circumstances is considerable.

*Id*.

In the present case, there is no meaningful connection between the false statements charge added by the superseding indictment and the original indictment for receipt and transport of an explosive, and an attempt to cause damage to property and inflict harm with the explosive. The character of counts 1-2, their elements, and the substance on which they are based are materially distinct from the false statements charge. Their only connection – that the statements at issue originated during the FBI's interrogation of Rathbun regarding the fuel canister incident– is tangential at best. Here, it is virtually impossible to conceive of a legitimate theory, supported by evidence, that would legitimize joinder, as the original counts are neither based on the same act or transaction as the false statements charge, nor do they share a common scheme or plan.

### B.  Same Act or Transaction

Joinder under this provision is proper where many facts are common to both sets of charges.  *Randazzo,* 80 F.3d at 628.  Courts have looked to whether "the same evidence would be admissible in both trials if the counts were severed."  *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004) (no plain error in failing to sever pipe bomb and drug conspiracy charges where indictment charged use of pipe bomb in furtherance of the drug conspiracy).

4

"In determining whether counts are properly joined, this court considers such factors as 'whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.'" *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996), citing *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995) (internal citations omitted). None of those factors are present here.

Courts' pronouncements concerning Rule 8(b), having to do with the joinder of defendants, are instructive here, as Rule 8(b) allows joinder if defendants are found to have engaged in the "same act or transaction, or in the same series of acts and transactions." As one court observed in ordering relief from misjoinder under 8(b) in a multi-defendant indictment alleging two distinct conspiracies:

> Of course, in the broadest sense, both conspiracies are part of the same series of acts or transactions constituting offenses -- just as the 1995 World Series was part of the same series of acts or transactions that began with Abner Doubleday. But, as this example demonstrates, Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning.

*United States v. Kouzmine,* 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996). "If the factual matrices of the alleged facts are different, there is no series and hence no joinder." *United States v. Turkette,* 632 F. 2d 896, 908 (1st Cir. 1980), *reversed on other grounds,* 452 U.S. 576 (1981).

Here, there is no evidentiary overlap between counts 1-2 and the superseding indictment's false statement charge. They are separate acts with distinct factual matrices. Whether Rathbun knowingly and willfully made materially false statements to FBI agents (regarding such things as his internet use and whether it had been thirteen or fourteen days since he had left home), has absolutely nothing to do with the issues the jury must consider in counts 1-2, specifically whether, on April 2, 2020; (1) Rathbun placed the Scepter fuel container on the treeline of Converse Street, a 50 meter distance from Genesis House, and if he did, (2) was it

5

with the intent that it be used as a weapon to cause damage to property and inflict harm to somebody.

### C.  Common Scheme or Plan

Joinder is proper under the rubric "common scheme or plan" if one illegal activity provided the motive and necessity for another illegal activity. *See United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000) (mortgage fraud and drug charges properly joined, where defendant submitted fraudulent income tax returns when applying for mortgage loans in order to conceal that his income was derived from drug sales). Joinder of counts that are not sufficiently "connected" may require reversal.  *See United States v. Litwok,* 678 F.3d 208, 216 (2d Cir. 2012) (reversing defendant's convictions for mail fraud and tax fraud).

Nothing alleged in counts 1-2 can be said to have "motivated" the specific false statements alleged in count three or made them necessary. To begin, Rathbun's April 15th statements to agents regarding his internet use has *nothing* to do with the April 2 fuel canister incident and, as such, are wholly unrelated, and completely irrelevant, to the April 2 fuel canister incident.

Like his statements about internet use, Rathbun's statement, made on April 15th that he "hadn't left the house in two weeks because of the Covid-19 Pandemic", lacks the required nexus that it be motivated by the alleged illegal activity of counts 1-2.  Not only is it seemingly factually accurate,[1] it is a statement concerning his whereabouts in the two weeks *following* the April 2nd gan can incident. It bears no logical connection to the alleged illegal behavior underlying counts 1-2. An attempt to connect this statement to counts 1-2, by characterizing it as

---

[1] If one is to assume that Rathbun left home in the early hours of April 2, 2020, as the government contends, then his statement to agents on April 15, 2020 that he hadn't left his home in the past two weeks due to the Covid-19 pandemic is not false, as 13 days had passed since the April 2nd date.

a lie crafted to cover up the conduct alleged in counts 1-2, would first involve a gross mischaracterization of the statement itself, as well as a disregard for the fact that the statement was made in the context of Rathbun's explanation of how he travels to the Methadone clinic (on Converse street) and how during the COVID-19 pandemic, the clinic had provided multiple Methadone doses to him at a time, so that he would not need to visit the clinic daily. *See FBI 302 Rathbun interview summary*.

Any attempt to connect Rathbun's statement that "he was not familiar with the location on Converse Street where the Scepter fuel canister was located" to the illegal activity in Counts 1-2, requires a similar disingenuous recharacterization of the statement as a 'lie' directly motivated by the fuel canister incident. To do so is again a gross misrepresentation of Rathbun's actual statements that he was:  (1) "familiar with Converse Street in Longmeadow, MA"; (2) "that he drives down the street almost every day to go to the Methadone clinic"; and that he, (3) "knows there is a Jewish private school on the street but was not familiar with the nursing home 'Ruth's House.'" *Id*. Mischaracterizing these statements as a lie motivated by the alleged illegal conduct of counts 1-2 is not supported by the evidence and cannot create the required nexus for joinder. It must also be noted that these statements are neither directly relevant nor probative to the question central to alleged false statement #1, whether Rathbun was familiar with the "location on Converse Street where the Scepter fuel canister was located", a location the indictment identifies as "approximately 50 yards from the Genesis House on Converse street in Longmeadow, MA". (Docket No. 82).

7

II.      **The False Statements Count Must be Severed to Avoid the Undue Prejudice that Would Result from a Joint Trial.**

Fed. R. Crim. P. 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

To obtain a severance of joined counts, a defendant must make a strong and convincing showing of prejudice. *United States v. Richardson,* 515 F.3d 74, 81 (1st Cir.2008), *certiorari denied*, 553 U.S. 107 (2008). Three types of prejudice may result from trying a defendant for several offenses during the same trial:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissable in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*Id.,* quoting *United States v. Jordan*, 112 F.3d 14, 16 (1st Cir. 1997).

Even if offenses are properly joined, the Criminal Rules authorize severance if the joinder of offenses appears to prejudice a defendant. *Fenton*, 367 F.3d at 21-22. The First Circuit has stated that "Rule 8(a)'s joinder provision is generously construed in favor of joinder, [citations omitted], in part because Fed. R. Crim. P. 14 provides a separate layer of protection where it is most needed." *Randazzo*, 80 F.3d at 627.

Here, the prejudice that would arise from a joint trial warrants severance. With respect to count three, the jury would hear allegations and evidence that Rathbun made false statements to FBI on April 15th, which could lead jurors to impermissibly conclude that he has a bad character

8

and thus is more likely guilty of the charges set forth in counts 1-2. Thus, this evidence would be inadmissible propensity evidence. Fed. R. Crim. P. 404.

Count three would include evidence regarding Rathbun's drug addiction and methadone treatment, as well as his internet uses (including the fact that he used the internet for pornography, on-line dating, and for creating multiple personal facebook profiles). This extremely personal, embarrassing, and highly prejudicial evidence would not otherwise be admissible as evidence in counts 1-2.  Fed. R. Evid. 403, 404.  Thus, Rathbun would be unfairly prejudiced if that count were tried before the same jury. *See Jordan,* 112 F.3d at 17.

Moreover, due to the nuanced nature of the false statements allegations, combining it with counts 1-2 would effectively create a significantly time consuming and confusing sideshow in the midst of what should be a trial about placing an explosive in an attempt to damage and destroy buildings and real property. The sideshow risks confusion of the issues and the misleading of jurors, to say nothing of undue delay and waste of time, and so warrants count three's severance. *See* Fed. R. Evid. 403.

Lastly, joining the false statements charge with counts 1-2 would effectively erode Rathbun's constitutionally protected right to testify on his own behalf. The false statements at issue in count three stem from an interrogation, lasting over five hours, that the FBI failed to record. The failure to preserve such critical evidence places Rathbun in an untenable position where there is no neutral or accurate verbatim account of what questions Rathbun was actually asked or what responses he actually made. With no other way to meaningful challenge the agents reconstructed 'summary narrative' of Rathbun's words, it is highly likely Rathbun will need to testify about what he, in fact, said. However, should the false statements charge be combined with counts 1-2, Rathbun would be forced into a situation where "a defendant may wish to testify

in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither." *Id*. at 16. This highly prejudicial situation alone warrants a severance of the false statements charge.

## CONCLUSION

For the reasons stated above, Rathbun requests that this motion be allowed and that counts 1-2 be tried separately from, and prior to, count three.

JOHN RATHBUN
By his attorneys,


*/s/ Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg
Timothy G. Watkins
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061


## CERTIFICATE OF SERVICE

I, Forest O'Neill-Greenberg, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 20, 2020.

*/s/ Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg