**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 20-CR-30018-MGM (S-1)** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S MEMORANDUM FOR RULE OF COMPLETENESS

The United States of America, by and through its counsel, Andrew E. Lelling, United States Attorney for the District of Massachusetts, Steven H. Breslow and Neil Desroches, Assistant United States Attorneys, and Risa Berkower, Trial Attorney, United States Department of Justice (the "Government"), respectfully submits the instant opposition to defendant's Motion to Preclude into jail Calls (D.177).

1.    The Defendant's Charges

Counts One and Two charged the defendant with violating 18 U.S.C. §§ 844(d) and 844(i), respectively, based upon his April 2, 2020 placement of a homemade incendiary device, consisting of a diesel fuel canister one-third filled with gasoline and a Christian proselytizing pamphlet as a wick, outside the Longmeadow campus of Jewish Geriatric Services Lifecare, Inc. ("JGS"). Count Three charges the defendant with a violation of 18 U.S.C. 1001 for making the following two false statements to the FBI about this incident:  (1) he was not familiar with the location on Converse Street where the device was placed; and (2) he had not left his house in the past two

weeks because of the COVID-19 pandemic.[1]

2.      The Government's Recordings of the Defendant's Telephone Conversations

The Government will be offering the following recordings of telephone calls placed by the defendant to his mother from the Hampden County Jail and House of Correction (the "Jail").

April 27, 2020 - Call 53150994.  In this call, the defendant stated that: (1) a friend, Glenn Milliken, told a defense investigator that on April 3, the defendant had asked him to wear black and go out; (2) the defendant was "starting to freak out," question whether he did in fact place the canister at JGS, and that he "did fuck up enough"; and (3) the FBI might eventually discover that the defendant possessed the canister, which he recognized would be "very big and very bad."[2]

May 2, 2020 - Call No. 53212152.  In this call, the defendant acknowledged his mother's statement that "Things were kind of going out of control with you, so this is a time out."

May 14, 2020 - Call No. 53393838.  In this call, the defendant repeatedly discussing driving down Converse Street "by Ruth's House" on April 2 between 4:30 a.m. and 8:30 a.m., stating variously that "I think I did – probably did," "I always go that way," and "I was [on Converse Street].  I know I was."  The defendant also stated:

> I'm just praying that between 4:30 and 8:30, that hopefully I didn't,
>
> but I don't – I don't know. I think I did. So, then, from there, what's
>
> going to happen is when they do say that I did, they're going to start
>
> getting video. And they're going to go the neighbors, because they
>
> already did go to the neighbors, and get the video from people who

---

[1] The defendant stated he did not recognize the location even when shown a map with an X indicating where the device was placed, and stated that he had not left the house in two weeks in direct response to a question that sought his location on April 2, 2020.

have video cameras on Converse Street in front of Ruth's house.
And then, they can get a video of me driving down Ruth's – down
Converse Street on top of the phone, on top of the blood. It's just
going to be wonderful.

May 23, 2020 – Call No. 53515544. **This call is highly relevant to the defendant's intent and motive and directly rebuts the defense argument, raised explicitly in the defendant's opening, that the defendant is areligious, has no feelings in any way about religion, and would not commit an act of violence.** In this call, the defendant engaged in the following colloquy with his parents:

*Father*:  You have our hearts, and you have the Lord with you in there.

*Defendant*:  I know, I do, that's why I'm calling, I want to let Mother know I was able to get a Bible finally

*Father*:  - You got a Bible! –

*Defendant*:   - I told him if I didn't

*Father*:  Hold on –

*Defendant*:  Yeah, go ahead.

*Mother*:  Wow, that was a fast answer to prayer.

*Defendant*:  I told them if I didn't get a Bible I was going to cause a riot, and I started picking up shit and throwing shit around, and I got a Bible.

*Mother*:  [Laughing].

*Defendant*:  I told them, I said no, I'm fucking dead serious, I took

3

shit out, I took my shoes off and I started throwing them around, I said if you don't give me a fucking Bible right now I'm going to cause, I'm going to cause this whole pod to riot.  I'm going to cause every fucking thirty people in here to go fucking crazy if you don't give me a Bible.  I don't care, I do not care.

June 25, 2020 - Call No. 53836600.  In this call, the defendant stated, "Everything is good, except I did drive by there [JGS] in the morning on my way out, but yes, the whole time I was there in Chicopee, and in wherever, but I did drive by.  So, it's not a homerun; it's a triple. But I did drive by there at 4:30 – at 5:00 o'clock in the morning, or something on my way to the highway."

July 16, 2020 - Call No. 54088436.  In this call, the defendant stated of JGS's Genesis House, "Grandma used to live there.  We went there for Christmas."

August 13, 2020 - Call No. 54437022.  In this call, the defendant and his mother discussed the FBI's seizure and return of his van, and the defendant remarked that "these idiots, they didn't know, I didn't even take the van," as follows:

*Mother*: I suspect that if they gave the van back, there was nothing there.

*Defendant*: No, there's nothing. There is nothing.

*Mother*:  Because if they had something –

*Defendant*:  Because these idiots, they didn't know, I didn't even take the van.

*Mother*:  Well they know. Yeah, they know now.

*Defendant*:  They know now, but they didn't when they took it

4

3.      Principles of Law

Rule 801(d)(2)(A) of the Federal Rules of Evidence provides that an opposing party's statement is not hearsay if it meets the following conditions: "The statement is offered against an opposing party and (A) was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). Because a defendant's recorded jail calls are not hearsay under this Rule, they are admissible. *United States v. Gil*, 729 F3d. Appx. 11, 16 (2d Cir. 2019); see *United States v. Hicks*, 575 F.3d 130, 143 (1st Cir. 2009) (affirming admission of defendant's jail call with another party and holding that there was no Confrontation Clause violation because the other party's statements were offered to provide context for the defendant's statement).

Rule 106 of the Federal Rules of Evidence states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time." Fed. R. Evid. 106.

Under the doctrine of completeness as set forth in Rule 106, "a party wishing to introduce only a portion of a recorded statement may be precluded from doing so where *partial disclosure out of context would result in unfairness* to the other party. *See United States v. Awon*, 135 F.3d 96, 101 (1st Cir. 1998) (stating "[t]he doctrine of completeness . . . operates to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the *full text* of the out-of-court statement.") (emphasis added). The rule permits "a party against whom a fragmentary statement is introduced [to] demand that the rest of the statement (or so much thereof as is appropriate) be admitted into evidence in order to place the excerpt in context." *United States v. Houlihan*, 92 F.3d 1271, 1283 (1st Cir. 1996).

However, as the First Circuit has repeatedly stated, the rule of completeness *only* applies

where the introduction of limited pieces of information create unfairness or potential for misimpression. *Awon*, 135 F.3d at 101. "*The doctrine of completeness does not permit the admission of otherwise inadmissible evidence simply because one party has referred to a portion of such evidence*, or because a few inconsistencies between out-of-court and in-court statements are revealed through cross-examination; rather, it operates to ensure fairness where a misunderstanding or distortion created by the other party can *only* be averted by the introduction of the full text of the out-of-court statement." *Id.* (emphasis added); *United States v. Simonelli*, 237 F.3d 19, 28 (1st Cir. 2001) (same); *see* Fed. R. Evid. 106 advisory committee's note ("The rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to a point later in the trial.").

The rule of completeness does <u>not</u> require the admission of separate and distinct sets of statements, such as separate documents or interviews. *See Harrington v. United States*, 504 F.2d 1306, 1315 (1st Cir. 1974) ("No rule of 'completeness' requires the admission of separate and distinct documents merely because they were executed on the same day."); *United States v. Bauzo-Santiago*, 49 F.Supp.3d 155, 159 (D.P.R. 2014) (holding that the rule of completeness did not apply to as two separate and distinct interviews on the same day); *United States v. Tarr*, No. 90-CR-651, 1991 WL 33644, *4 (N.D. Ill. Feb. 12, 1991) (holding that "[a]s part of a separate conversation, the statement cannot be admitted under the 'rule-of completeness' theory.")

4.      <u>The Defense Bears the Burden of Justifying Its Admission of Otherwise Inadmissible Hearsay</u>

The First Circuit has clearly held that "Rule 106 is <u>not</u> a pathway to the admission of otherwise inadmissible *portions* of a writing or recorded statement merely because some distinct

6

portions of *that* writing or statement are admissible. *United States v. Altvater*, 954 F.3d 45, 49-50 (1st Cir. 2020) (emphasis added) (citing *Awon*, 135 F.3d at 101). The defense bears the burden of showing how the Government's redactions created a "misunderstanding or distortion" that "[could] only be averted by the introduction of the full text of the out-of-court statement."" *Id.*

The same principle applies, of course, with even greater force to separate and distinct recordings. In *United States v. Weisman*, 624 F.2d 1118, 1128-29 (2d Cir. 1980), the Second Circuit affirmed the district court's decision to bar the defense from admitting under Rules 803(24) and 804(b)(5), the residual exceptions to the hearsay rule, recordings that the Government had opted not to play. The Second Circuit held that the ruling - that "the recordings failed to satisfy the requirements of the Rules, since the recordings did not embody the necessary 'circumstantial guarantees of trustworthiness' and were not 'more probative' than other evidence that could be procured by Weisman, including his own testimony" – was well within the court's discretion. *Id.* at 1129.

5.    Conclusion

For the foregoing reasons, the Court should deny the defendant's Motion in Limine and, if offered, deny his effort to introduce his own recorded statements that are wholly separate and distinct from any recorded statement that the Government will be offering in its case in chief.

Respectfully submitted,

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330

steve.breslow@usdoj.gov

By:     /s/ Neil Desroches
        NEIL DESROCHES
        Assistant U.S. Attorney
        300 State Street, Suite 230
        Springfield, MA 01105
        413-785-0398
        neil.desroches@usdoj.gov

By:     /s/ Risa Berkower
        RISA BERKOWER
        (NY4536538)
        Trial Attorney
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue NW
        Washington, D.C. 20530
        202-305-0150
        Risa.Berkower@usdoj.gov

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:     /s/ Steven H. Breslow
        STEVEN H. BRESLOW
        Assistant U.S. Attorney

Dated:  November 16, 2020

8