UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 20-30018-MGM |
| | ) | |
| JOHN RATHBUN | ) | |

**DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY**

After substantial litigation and a two-week trial, John Rathbun stands convicted of a single count of a false statement to an FBI agent, for which the United States Sentencing Guidelines recommend a sentence of between 2-8 months. U.S.S.G. §2B1.1. He has now been in detention for more than seven months. For the reasons that follow, the Court should release Rathbun pending sentencing and any further proceedings as he is neither a flight risk nor is he a danger to the community if released on conditions.

**1.  The likelihood that the government will ever obtain a guilty verdict on any of the remaining counts is extremely low.** The Court has heard the evidence and so the defendant will not belabor it. It is sufficient to say that the government did not, and cannot, articulate any motive for Rathbun's alleged placement of the fuel container at 780 Converse Street with the intent to intimidate, injure persons, or destroy property. The centrality of motive given the charged conduct means, defendant submits, that there will always be jurors who will steadfastly refuse to convict in the absence of an intelligible motive. No better evidence of this principle exists than the quick and enduring realization by the trial jury that it would never be able to come to unanimity regarding the serious counts that are the gravamen of the indictment. Consequently, there is every indication that Rathbun will face sentencing for a nonviolent offense having already served the sentence recommended by the U.S. Sentencing Commission.

**2.    Should the government elect to retry the hung counts, trial cannot begin for several weeks, if not months**. As the Court is aware, the Chief Judge for the District of Massachusetts has begun tightening procedures to reflect the rapid escalation of Coronavirus cases generally and the impact on local detention facilities specifically. Most notably, the Chief Judge has recommended that no in-person proceedings take place in the week following the Thanksgiving holiday, in order to assess whether the expected increase in Coronavirus cases will make continued in-person proceedings unsafe for court personnel and the general public. Additionally, as at least three of the government witnesses traveled to Massachusetts from out-of-state; quarantine and COVID-19 procedures will require a significant delay in proceedings. Moreover, this Court has other matters involving defendants detained longer than Rathbun that likewise must be tried, further delaying Rathbun's retrial. Keeping Rathbun detained in the interim, where there is a likelihood that the outcome will be the same and he will have overserved the guideline range – perhaps by double the high end of the range – is inappropriate where he can be conditionally released to insure his appearance in court and the safety of the community.

**3.    Mitigating COVID-19 cases in the detention setting continues to be a chronic problem:** The Hampden County Jail and House of Correction's laudable precautionary measures have, until recently, appeared effective and its infection rate has compared favorably to other facilities where Coronavirus cases have run rampant and resulted in virtually total shutdown. At the end of the day, however, the conditions at Hampden Count are no different from the conditions at Wyatt Detention Facility, Rikers Island in New York, or Cook County Jail in Illinois - all facilities where Coronavirus has ravaged the staff and inmate population. Inmates at Hampden County are still sharing cells and common areas, including eating meals together. Mirroring society-at-large, as well as other institutions seeing a spike in infections in recent

weeks, the number of active COVID-19 cases at Hampden County Jail and House of Correction has more than doubled in the last two weeks, from nine (9) active cases on November 11 to **22** active cases as of this day.

To be sure, other than being a lifetime cigarette smoker Rathbun does not presently appear to suffer from the comorbidities identified by the Centers for Disease Control as presenting a greater risk of illness. And the staff at the Hampden County Jail has notified undersigned counsel that Rathbun was tested for Coronavirus upon his return from court on Monday and has tested negative. But the fact that Rathbun does not present as high risk does not mean that inmates at the facility have better means of maintaining social distancing or sanitation. It does not mean that the facility has the capacity for adequate medical care. It does not mean that inmates at the Hampden County Jail and House of Correction are any safer than inmates at facilities that are presently experiencing mass outbreaks. Where there exists an alternative that provides for the safety of the community that is commensurate with the low risk Rathbun poses, release on conditions is appropriate.

4. **The testimony and evidence at trial reinforces the Court's previous finding that Rathbun does not present a risk of flight, and the testimony and evidence point toward a sharply reduced risk of danger to the community.** There has never been any serious suggestion that Rathbun, a lifetime resident of East Longmeadow, is a flight risk. Neither the Probation Department, Magistrate Judge Robertson, nor this Court so found when initially considering release or detention. And the Court has now heard significant testimony regarding Rathbun's circumstances that only strengthens the conclusion that the risk Rathbun will flee is zero.

As to danger to the community, the government's testimony and evidence at trial attempted – unsuccessfully - to prove a far different theory of guilt than it posited at the

inception of the case. As the Court has now learned, since Rathbun's arrest seven months ago, the government has furiously sought evidence of his intent to intimidate, injure persons, or destroy property. It interviewed his family, his friends, his family's employers, friends of friends, acquaintances, the drug dealers he buys drugs from, his ex-wife. It searched every corner of the home he grew up in and has lived at for the past several years. It has obtained more than two dozen search warrants to probe his digital and online life, as well as the online life of his friends. It has interviewed the avowed white supremacists it identified in the complaint, only to find none had ever heard of Rathbun, none had ties to East Longmeadow, and none had engineered a plot to firebomb an assisted living facility operated by a Jewish-sponsored social services group. It short, the government has utterly failed to uncover any evidence of motive, the prerequisite of its case against Rathbun and the lynchpin of its detention argument to this Court that no conditions of release would suffice to protect the public. The government's abandonment of its theory, and the rejection of that theory manifested by the jury's inability to come to agreement, speaks volumes to the vanishingly small risk of danger to the community Rathbun actually poses should he be released on conditions.

5. **The Bail Reform Act mandates release in these circumstances.** A defendant must be released on personal recognizance or an unsecured appearance bond unless the court determines that "such release will not reasonably assure" the person's appearance or "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).[1] Even if a court

---

[1] Section 3143 of Title 18, which nominally governs "Release or detention of a defendant pending sentence or appeal," suggests that the burden shifts to the defendant to show clear and convincing evidence of lack of flight risk or danger to be entitled to release. 18 U.S.C. § 3143(a)(1). Section 3143 goes on to specify, however, that the burden does *not* change where "the applicable guideline promulgated pursuant to 28 U.S.C. § 994 does not recommend a term of imprisonment." 18 U.S.C. § 3143(a)(1). As noted, Rathbun's guideline sentencing range for the single count of conviction is 2-8 months in Zone B of the Sentencing Table where non-incarceration alternatives are available and recommended. Given the fact that Rathbun has nearly served the entirety of the top-end of the guideline

determines that personal recognizance or unsecured bond, without more, might endanger any other person or the community, the Bail Reform Act *still* mandates release, but subject to certain specified conditions. 18 U.S.C. § 3142(c). Conditions of release can include, among other conditions suggested by the Bail Reform Act, "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv). The government bears the burden of demonstrating by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the safety of any other person." 18 U.S.C. § 3142(f).

The Magistrate Judge's initial release Order mandated compliance with **twelve (12)** wide-ranging conditions, some or all of which the Court could adopt when choosing to release Rathbun. *See* Order Setting Conditions of Release [D.E. 8]. Most salient to reducing the already low risk of Rathbun's danger to the community, the Magistrate Judge ordered Rathbun to refrain from excessive use of alcohol, unlawful possession of narcotics (enforced by drug testing), inpatient or outpatient substance abuse therapy, and release to home detention monitored by the Probation Department. *Id.* The combination of conditions imposed are more than sufficient to ensure the safety of the community.

If those conditions were not enough – and they are far more than enough – the notoriety generated by Rathbun's arrest and trial, further reduce the specific risk of dangerousness. Given the stay-at-home advisory now in effect across the state, it is frankly inconceivable that Rathbun would venture out into a lightly traveled world, where his alleged offense is widely known, with the certainty of arrest should he be virtually anywhere in the community, let alone in the vicinity of Jewish Geriatric Services.

---

sentencing range, this is a case where the guideline range established by the Sentencing Commission manifestly does not recommend a further term of imprisonment.

## CONCLUSION

For the foregoing reasons, this Court should Order Rathbun's release on conditions

pending sentencing and any other proceedings in this case.[2]

JOHN RATHBUN
By his attorney,

*/s/ Timothy G. Watkins*
Timothy G. Watkins
Forest O'Neill-Greenberg
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as identified on the Notice of Electronic
Filing (NEF) on November 24, 2020.

*/s/ Timothy G. Watkins*
Timothy G. Watkins

---

[2] At the time of the events at issue in this case, Rathbun was nearly at the expiration of a one-year period of unsupervised probation imposed in conjunction with a 2019 continuance without a finding disposition our of Palmer District Court in Docket . Upon information and belief, the Palmer District Court Probation Department upon learning of allegations in this matter issued a probation violator warrant that is currently lodged a detainer at the Hampden County Jail. Should the Court release Rathbun, he will first appear in Palmer District Court before being released to his home.