**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **No. 20-CR-30018-MGM (S-1)** |
| **JOHN MICHAEL RATHBUN,** | |
| **Defendant.** | |

GOVERNMENT'S MOTION IN LIMINE TO ADMIT THE TESTIMONY OF
PERCIPIENT WITNESS CHAIM KOSOVSKY

The United States of America, by and through its counsel, Andrew E. Lelling, United States

Attorney for the District of Massachusetts, Steven H. Breslow and Neil Desroches, Assistant

United States Attorneys (the "Government"), respectfully request that the Court admit the

testimony of percipient witness Chaim Kosovsky ("Kosovksy") during the defendant's trial.

For the reasons set forth below, Kosovky's testimony is admissible, directly relevant to an

element of one of the offenses, and not unfairly prejudicial.  Consequently, it should be admitted.

1.      Factual and Procedural Background

On the morning of April 2, 2020, the Longmeadow Police Department and the

Longmeadow Fire Department responded to the report of a suspicious device placed near the

entrance of Jewish Geriatric Services Lifecare, Inc. ("JGS"), a non-profit organization located at

770 Converse Street in Longmeadow, Massachusetts.

As set forth below, Kosovksy lives directly across the street from where the device was

placed and regularly provided pastoral services to individuals at the various JGS buildings,

including Genesis House (the nearest building to the device).  On the morning of April 2, Kosovksy

personally observed the police response to the device, was informed by the police that the device

had been discovered, and felt threatened by its presence across the street from his house and at JGS.

On April 15, 2020, the Federal Bureau of Investigation executed a search warrant at the defendant's East Longmeadow home and arrested the defendant. Later that day, the defendant appeared in federal court based upon a Complaint that alleged violations of Title 18, United States Code, Sections 844(d) and 844(i). (D.1, *United States v. John M. Rathbun*, 20-mj-03061-KAR). The Complaint discussed the discovery of a white supremacist organization on two social media platforms, the targeting of Ruth's House (another of the buildings on the JGS campus), and the designation of April 3, 2020 (*i.e.*, the day after the discovery of the device) as "jew killing day." *Id.* at ¶¶ 9-17.

The defendant's arrest and charge were widely publicized, and the FBI thereafter interviewed various individuals involved with JGS concerning their response to the discovery of the device on or after April 15, 2020. The FBI did not interview Kosovksy because it was unaware that Kosovksy had learned of the device as it was discovered on April 2, 2020.

On October 15, 2020, the Grand Jury charged the defendant in a Superseding Indictment with three offenses related to the April 2, 2020 incident. The first count charged the defendant with Attempt to Transport and Receive, and Transportation and Receipt of, an Explosive in violation of 18 U.S.C. §§ 844(d) and 2; the second count charged him with Attempt to Damage and Destroy Buildings, Vehicles, and Real and Personal Property by Fire and Explosive in violation of 18 U.S.C. §§ 844(i) and 2; and the third count charged him with two False Statements To A Federal Official in violation of 18 U.S.C. § 1001 concerning his knowledge of the location where the was found and his whereabouts on April 2, 2020. D.82.[1]

---

[1] On October 30, 2002, the Court severed a third alleged false statement (concerning the

Prior to the first trial, the Government informed the defense that it intended to call several witnesses who learned about the discovery of the device after April 15, 2020.  On October 13, 2020, the defense filed a motion *in limine* seeking to preclude this witness testimony.  (D.76).  On October 19, 2020, the Government filed an opposition to this and other motions *in limine*.  (D.86 and the "Opposition").

On October 21, 2020, the Court heard oral argument on the motions *in limine*.  (D.94).  The defense argued that the testimony was irrelevant and unfairly prejudicial, and stated that the Government should not be able to "call witnesses after the fact that didn't see it in sight to talk about their reactions to what do you think about the fact that this was found on the property." Transcript, October 21, 2016, at 36.  The Court responded that "it depends on the context . . . So what's the background?  How did they find out?  Who told them?"  *Id.*

The Government identified two witnesses who saw the device (neither of whom testified at the first trial, nor will they likely testify at the retrial), and then contended that "with regard to the witnesses who work at the facility or live at the facility and who didn't see the device themselves, . . . these individuals' understanding of what happened is relevant whether or not the defendant had an intent to intimidate because under an objective reasonable standard, that is considered probative, not determinative."  *Id*. at 37-39.  The Court expressed concern with admitting the testimony of witnesses who learned about the device indirectly:

> I'm not sure how they learned about it.  I'm not sure if whoever told them was very excited and dramatic and scared themselves and told them in a very, in a very extreme way something to the effect of can you believe what was out there? This almost happened, you know, and was very scared highlighting the danger, highlighting the

---

defendant's Internet use) from the trial of the remaining counts (including the other two statements in Count Three).  D.110.

> potential fire; highlighting their own fear as a person who's reporting to your potential observation witness.

*Id.* at 38-39.  On October 26, 2020, the Court entered an Electronic Order that stated "For reasons discussed in court, the court will allow reaction testimony from percipient JGS witnesses who saw the fuel container but will not allow such testimony from JGS witnesses who did not see the fuel container."  (D.101).

The defendant's trial took place from November 9 to 23, 2020.  The Government called no witnesses to provide their reaction to seeing the device.

On November 23, 2020, the jury convicted the defendant of the part of Count Three that alleged the defendant made a false material statement to the FBI about his whereabouts during the early morning hours of April 2, 2020.  D.192, 218.  The jury deadlocked on both Counts One and Two as well as the first alleged false statement in Count Three concerning his knowledge of the location where the device as found, and the Court declared a mistrial on the deadlocked counts.  *Id.*  The re-trial of those counts will commence on May 31, 2021.

On December 29, 2020, the FBI interviewed Kosovsky and his wife, Rochel Kosovksy ("Rochel").  The Kosovksy stated, inter alia:

> i.      Kosovksy is a Rabbi who works at JGS and the Jewish school located down the street from JGS.  Rochel is a teacher at the Jewish school.
>
> ii.     They live directly across the street from JGS.
>
> iii.    On April 2, 2020, Kosovksy, Rochel, their adult children, and their grandchildren were all living at their home because of the pandemic.  That morning, they saw police and fire trucks across the street from their house and were concerned about what was happening.  The location of the device (*i.e.*, by a tree at the driveway entrance to JGS) was approximately 35 feet

4

from their front door.  The police spoke to Kosovsky and Rochel about their response, and Kosovsky realized there was some sort of dangerous object across the street.  The police asked if the Kosovskys had video camera footage to review, but they did not.

iv.    After this incident, the Kosovskys felt vulnerable and threatened, particularly in light of the recent violence directed against Jews in the United States.  They were particularly concerned because their adult children and grandchildren were residing with them and could have been harmed.

On January 12, 2021, the Government conducted a follow-up interview with Kosovksy alone.  Kosovsky generally reiterated his prior statements to the FBI, and in particular stated:  he is employed by the Jewish School, not JGS, but frequently visits JGS in his role as a Rabbi at the Jewish school; he recalled police responding to the device, but not fire trucks; he did not see the device personally, but the police told him that someone left an explosive device with a wick at JGS between 5:00 and 8:00 in the morning.

2.    <u>The Court Should Admit The Testimony Of Kosovksy</u>

Count One charges the defendant with violating 18 U.S.C. § 844(d), which prohibits using explosives "with the knowledge and intent that it would be used to . . . <u>intimidate any individual</u>." 18 U.S.C. § 844(d) (emphasis added).  Courts routinely hold that, while not determinative, a victim's reaction to intimidation or a threat is relevant, admissible evidence that the jury may consider in assessing this element, even where an objective, reasonable person standard applies to assess the threat.  *See, e.g.*, *United States v. Fulmer*, 108 F.3d 1486, 1500 (1st Cir. 1997) (holding, in § 115(a) prosecution for threatening a federal agent, that "although the proper standard is what

a person making the statement should have reasonably foreseen, we find that evidence of the recipient's reactions is relevant to that inquiry"); *United States v. Whiffen*, 121 F.3d 18, 22-23 (1st Cir. 1997) (affirming § 875(c) interstate threats conviction, and noting, in assessing the sufficiency of the evidence, that "evidence regarding the reaction of the listeners is not conclusive, but it does suggest that at least these individuals perceived the statements to be threats"); *United States v. Magelby*, 241 F.3d 1306, 1314-15 (10th Cir. 2001) (holding, in cross-burning case, that the court "properly instructed the jury that it could consider the [victims'] reactions when deciding" whether the defendant's actions were intended to threaten them).

At the pre-trial conference on May 17, 2021, the Court recognized the Government's right to approach the re-trial anew. Here, although Kosovksy did not actually see the device and therefore falls within the ambit of the Court's prior ruling (D.101), Kosovksy did learn about the device on the morning of April 2, virtually contemporaneously with its discovery by the local police. Consequently, Kosovky's reaction was untainted by the subsequent allegations of white supremacy or anti-Semitism and the corresponding media coverage of the case. Because the Government had not interviewed Kosovsky until after the trial and he was consequently not the subject of the prior motion *in limine* argument, the Government asks the Court to consider this motion *de novo*.

Kosovsky's reaction is highly relevant because Kosovsky not only lived directly across the street from where the device was placed, but he worked at the JGS campus, including Genesis House, as part of his pastoral responsibilities.

Moreover, the police provided Kosovksy a brief, contemporaneous description of the

6

device for the purpose of asking him if he had seen it.[2]  Thus, the court's concern with an excitable or dramatic witness conveying their own fear to Kosovksy is absent here.

Furthermore, the police did not even inform him that the wick consisted of a Christian proselytizing pamphlet.  Kosovksy' s reaction – that he felt threatened and vulnerable by the discovery of the device, without regard to its religious nature – is therefore as relevant to the case as if he had observed the device itself by looking across the street.

Lastly, Kosovky's testimony is not unfairly prejudicial, since the Court can instruct the jury that Kosovsky's reaction is not determinative, but simply a factor for them to consider as they decide whether the placement of the device was intended to intimidate any person.

3.      Conclusion

For the foregoing reasons, the Government respectfully requests that the Court admit the testimony of Chaim Kosovksy that on April 2, 2020: (1) he observed the police response to the discovery of the device at the JGS driveway entrance across the street from his house; (2) listened to the police's general description of the device for the purpose of determining whether he had observed it; and (3) felt threatened and vulnerable by the placement of the device.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     */s/ Steven H. Breslow*
        STEVEN H. BRESLOW
        (NY2915247)
        Assistant U.S. Attorney
        300 State Street, Suite 230
        Springfield, MA 01105

---

[2] The police's description of the device is not hearsay because it will not be offered for its truth, but for the effect on the listener (Kosovksy).

413-785-0330
steve.breslow@usdoj.gov


By:    */s/Neil Desroches*
NEIL DESROCHES
(MA661357)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0398
neil.desroches@usdoj.gov


### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney


Dated:  May 17, 2021