UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION


United States of America  )
                          )          20cr30018-MGM
      vs                  )
                          )          May 17, 2021
John Michael Rathbun      )
_____)


TELEPHONE HEARING HELD BEFORE THE

HONORABLE JUDGE MARK G. MASTROIANNI.


APPEARANCES:


On behalf of the government:  Neil L. Desroches, Assistant United States Attorney, 300 State Street, Suite 230, Springfield, MA 01105.

Steven H. Breslow, Assistant United States Attorney, 300 State Street, Suite 230, Springfield, MA 01105-2926.


On behalf of the defendant: Timothy G. Watkins, Esq., 51 Sleeper Street, 5th Floor, Boston, MA 02210.

Forest J. O'Neill-Greenberg, 51 Sleeper Street, 5th Floor, Boston, MA 02210.


Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
United States Courthouse
300 State Street, Room 303D
Springfield, MA 01105
(413)731-0086
alice.moran@verizon.net

**(Telephone hearing commenced at 10:06.)**

THE CLERK:  Case before the court via telephone is Criminal Matter 20-30018, the United States of America versus John Michael Rathbun.

Counsel, can you please identify yourself for the record, starting with the government.

ATTORNEY DESROCHES:  Good morning, Your Honor.  Neil Desroches on behalf of the United States.

ATTORNEY BRESLOW:  And Steven Breslow here as well.  Good morning, everyone.  Good morning, Your Honor.

THE COURT:  Good morning.

ATTORNEY WATKINS:  Tim Watkins, Federal Defender Office, on behalf of John Rathbun.

ATTORNEY O'NEILL-GREENBERG:  Good morning, Your Honor.  Forest O'Neill-Greenberg also for Mr. Rathbun.

THE COURT:  Okay.  Perfect.

Is Mr. Rathbun joining us?

ATTORNEY WATKINS:  No.  I notified him of the hearing and told him it was his choice.  He chose not to be on the call.

THE COURT:  Sure.  Okay.  All right.

So any last issues that we need to talk about?  I know that there was some -- we put out a draft of what we were hoping a final jury instruction would look like, and there was some suggestions that we should have deleted

given the retrial and so those have been modified.

Any other issues that we should be talking about other than maybe the nuts and bolts of jury instruction?

ATTORNEY DESROCHES:  Your Honor, just on the issue of the jury instructions, there was a defendant objection, I believe it's paragraph No. 7, to giving an instruction altogether on the false statements.

However, I just want to be clear before we get into the trial that the government views this charge as still being live and viable and there are separate means of proving that count.

THE COURT:  So that's interesting.  I don't -- I was viewing the false statement as a potential consciousness of guilt issue, but I wasn't viewing it as a live charge anymore because he's been convicted.  The jury chose the specific statement to trigger that conviction. So I was looking at it more as a consciousness of guilt issue which you would seek admission.  Is that different than your look?

ATTORNEY DESROCHES:  It is, Your Honor.  We do view it as consciousness of guilt as well.  However, given the fact that the defendant -- the conviction isn't necessarily final and the defendant could appeal, I believe that we would still be able to proceed on the second false statement and potentially obtain a conviction

4

on that charge.  I would suggest that it's still viable.  The jury did hang on it.

THE COURT:  That's interesting.

ATTORNEY DESROCHES:  It's not final yet.

THE COURT:  That's interesting.  Do you have some law on that?  Is that -- I mean, that's an interesting point because it -- well, it's not -- I don't know if it's appealed yet.  I don't know if a notice of appeal has been filed but, okay.  Interesting argument.

Attorney Watkins, what do you think?

ATTORNEY WATKINS:  I think the government is wrong.  You can only convict a person on a single charge once.  You can't do it multiple times.

The government charged it in a specific way.  They charged the three different alleged lies in one count.  They succeeded on one theory.  He's been convicted.  No appeal has been filed, of course, because there's no final judgment entered on that particular count.  There will be an appeal on it, but it's as if the jury had come to an agreement at the first trial.

If indeed the jury had come back guilty as they did on Count 3 and also guilty on Counts 1 and 2, the government would not be permitted to then try the other two theories in its Count 3.  No, that wouldn't happen that way.  It would be the same thing if --

THE COURT:  Right.

ATTORNEY WATKINS:  -- if there were not guilty on those first two counts.  So the fact that it's a retrial makes no difference in that analysis whatsoever. I'm happy to look at whatever the government can come up with for law, but I think they're simply wrong.

THE COURT:  Attorney Desroches, I tend to agree with Attorney Watkins but I'm certainly happy to hear whatever you can submit for law.

It just seems like on the false statements there was a conviction and a conviction on one of the theories that was pushed by the government.  I don't see this as an opportunity to now see if you can get additional convictions on the alternate theories.  But I get your point.  Can you support it with any law?

ATTORNEY BRESLOW:  Your Honor, we'd like a briefing schedule.  I think the briefs could be filed relatively soon, say, in a week's time.

THE COURT:  Sure.  Okay.  Why doesn't the government -- Christina, would you give a week for the government and then a week for the defendant, and then I'll take a look at it?

CLERK RIVERA:  Okay.  The government has until Monday, May 24th to file and then the defendant can reply by May 31st.

THE COURT:  Okay.  And I definitely do not need more than four pages on this.

ATTORNEY BRESLOW:  Yes, Your Honor.  If it's a clear question, then we'll clearly indicate that to the court.

THE COURT:  All right.  That sounds good.

ATTORNEY WATKINS:  Your Honor, just for the record, May 31st is Memorial Day.  If we could have until June 1st, which would be the day following?

ATTORNEY BRESLOW:  That's the day of jury selection, Your Honor.

THE COURT:  All right.  Well, then let's expedite this a little more.  Give each side like six or seven days instead of the ten days so we get this in before the jury selection.

CLERK RIVERA:  So you want to give, let's see, the government until this Friday, judge, the 21st?

THE COURT:  Sure.

CLERK RIVERA:  Okay.  And then the defense until Friday the 28th, which is the Friday before trial.

THE COURT:  All right.

CLERK RIVERA:  Okay.

ATTORNEY BRESLOW:  Your Honor, given that the court has indicated it wants concise terse briefing on this, which we don't disagree with, should we set up a

time on the 28th after the court has had the opportunity to review the briefs to have a short argument?

THE COURT:  No.  I don't think I'm going to need it.  I'm going to look at this on the briefs.  And if there's some small chance that I want to hear the parties, I'll have Christina reach out to you.  But I think we're going to handle this on the papers.

ATTORNEY BRESLOW:  Okay.

CLERK RIVERA:  Okay.

THE COURT:  Anything else to cross off your list?

ATTORNEY DESROCHES:  Your Honor, the government has continued its trial preparation including speaking to witnesses.  One of those witnesses we've spoken to just the end of last week is Sara Drake who is the defendant's ex-wife.  She has provided us with information that we will be -- that has been reported as being written now. We will provide it to the defendant as soon as we receive it.

I think just to make a record of the notice, the government is now first informing the defendant of this. We just became aware of it.  Ms. Drake would testify that the defendant previously had burned her personal belongings; has had a large number of gas cans in his possession in the past; has started very large bonfires in

his yard using fuel as an accelerant, and I feel like I'm forgetting one thing.

So that would be it actually, Your Honor, and we will be providing a report detailing the statement as soon as it's completed.

ATTORNEY BRESLOW:  Your Honor, those are all --the three points that Mr. Desroches mentioned, those are all what we would consider to be new information that we received during a prep session last week.

There was a prior report that we believe was disclosed as well as summaries of her information in various affidavits.  There was a prior notice to the defense that according to Ms. Drake the defendant threatened to burn her house down on several occasions. She reiterated that during the prep session but the defense already knows about this.

THE COURT:  All right.  So we are going to need -- Attorney Watkins, what are you going to need if any of these information -- it sounds like some of it at least is going to be totally new, you're going to need to file for exclusion of the prior act evidence, right?

ATTORNEY WATKINS:  Yes.  Just thinking off the top of my head, there's a half a dozen reasons why this shouldn't come in.  Most notably now that we're two weeks away from the beginning of trial, this is way, way late

for 404(b) evidence which it clearly is.

THE COURT: You don't need to make the argument now, but we're going to need to set a schedule for you to make those arguments.

So the government is going -- the government is going to get these to the defense in the next by Wednesday; is that fair?

ATTORNEY BRESLOW: I expect so. We've asked the agent to rush the report. We're providing the notice orally now because we didn't want to wait for the finalization of the written report, but we will try to get it as soon as possible to the defense.

THE COURT: So what do you think, Attorney Watkins, Monday or Tuesday for your opposition?

ATTORNEY WATKINS: Yeah, I suppose. I don't think this is going to take much briefing. Again, I don't want to argue this, but the court knows this case pretty well. Of course, I don't know what she is talking about, but Ms. Drake at a minimum, this is information from years ago, four or five years ago, that she's talking about. There's a whole host of reasons why this testimony is not coming in at trial. But I guess if I have to brief it, I would.

THE COURT: Well, I mean I'm not sure much you have to brief it. We've been down this road. I'm

familiar with the concepts.  I'm familiar with the prior conduct evidence.  I know all about this case.

I mean, yes, you should memorialize your objections absolutely, but we don't need anything very lengthy.  So the government is ordered to produce this information we just discussed by Wednesday -- by this Wednesday, and if the defense can file by close of business on Tuesday their objection, and then by --

CLERK RIVERA:  -- May 21st, judge.

THE COURT:  Yeah, I don't have a calendar in front of me, so whatever you say.

CLERK RIVERA:  May 21st.

THE COURT:  Then the government can respond by Thursday close of business to the defendant's objections, and I'll take it under advisement.  If I want a hearing or an oral argument, I'll request it.

All right.  Anything else new and good?

ATTORNEY WATKINS:  If the government is done, I have a couple of things on the menu.

THE COURT:  Sure.

ATTORNEY BRESLOW:  Your Honor, we have one or two more items.

The first thing to state is that the parties are working towards some stipulations.  We provided drafts to Mr. Watkins.  We haven't received a response yet, but we

had started the conversation a week or so ago.  So we're hoping to try to cut down on the number of witnesses to the extent that we can agree to the stipulations.

We are going to have possibly two traveling witnesses, each of them appeared in the prior trial.  So we just wanted to make sure that we understood the COVID procedure to the extent that they differed, particularly as to individuals who are traveling from out of state.

And then another point is that we expect to file today a very short motion in limine concerning a witness Chaim Kosofsky, who is a percipient witness on April 2, 2020, the day the device was found.

He lived across the street from JGS.  He actually worked at various JGS facilities in connection of his -- in his capacity as a rabbi at the Yeshiva, the Jewish school that was down the street.  He saw the police presence that day and went outside and spoke to the police.  The police told him that they had found a device with a wick in it.  We expect him to testify about the nature of JGS, his work there, the presence of the Jewish institutions along Converse Street, and his reaction to the discovery of the device.

I want to emphasize, he did not see the device.  He saw the police.  He saw the police presence by the tree.  He was told that the device had been found by the tree and

that it had a wick in it, although the police didn't inform him of what the wick said.

So this was the subject of a -- this general issue was the subject of prior litigation. Our motion was C-76 and the court's decision was D-101. So we just have a very brief motion in limine for this particular witness. My guess is it's something the court can most likely handled without argument.

THE COURT: Okay. And that will be filed soon?

ATTORNEY BRESLOW: We expect to file it today.

THE COURT: All right. Attorney Watkins, you can oppose by Friday?

ATTORNEY WATKINS: Yeah, I think so. The court has ruled on this issue. I don't see any difference between this witness and the ones that the government proposed the first time.

THE COURT: It does seem like I had ruled on a very similar issue and so this might be a quick ruling, but nonetheless we will examine it.

ATTORNEY BRESLOW: We see this as --

ATTORNEY WATKINS: I can file by -- sorry.

ATTORNEY BRESLOW: That's okay, Tim. Go ahead.

ATTORNEY WATKINS: The answer is yes, I can file something by Friday.

THE COURT: All right.

ATTORNEY BRESLOW: Nothing further for the government then, Your Honor.

THE COURT: All right. Thank you. Attorney Watkins.

ATTORNEY WATKINS: Yes, Your Honor. I think the court's getting the sense of the mischief that we may be running into at the second trial. We tried the original case with 15 witnesses. The government has --

THE COURT: I enjoy your characterization of this as the mischief. That was good. Okay.

ATTORNEY WATKINS: We tried this case with 15 witnesses the first time through. The government has listed fifty, that's 5-0, 35 more witnesses than we had at the first trial.

The government has assured us that many of those witnesses are not people they actually intend to testify, and that they've assured me that they will get a more realistic witness list. But there are clearly issues here that, to our view, clearly run afoul of decisions the court already made.

The government, for example, has listed several witnesses from All Solar Energy regarding Mr. Rathbun's employment there, which ended a month before the events at issue.

They've listed I believe up to four witnesses to testify about the Chicopee motel incident that the court ruled that they could introduce in a limited way.  But my clear sense from the government's witnesses is that they intend to spend a lot of time and a lot of witnesses on that particular incident as well.

I think the court can hear the government is really drilling down deep into 404(b) issues here, and I think we're going to run into some really, really serious problems as we get closer to trial if the government starts to try to slide in some of these witnesses while we're going to trial.

THE COURT:  Well, the government has the right to try the case how they want to try it and make tactical decisions on how they want to try it the second time.

The benefit that we all have is that we're all very familiar with this case, and so I feel very well prepared to be able to rely upon prior rulings and apply the legal reasoning from those prior rulings to any new situations that arise on the fly during trial.

I mean, I feel fairly confident because of how close we are all to this case to be able to handle those matters pretty quickly when they come up.  And I feel pretty confident the parties the way they will frame them right away because we are all so familiar.

ATTORNEY WATKINS: I would certainly agree with the court. I'm a little worried about what an opening statement might look like given the kinds of directions that the government is going here.

THE COURT: Okay. I'm happy to entertain a motion if you're concerned about that. That would try to get a preview of opening statements for both parties that the court would be satisfied with if you wanted to file something like that. I mean, I don't anticipate--

ATTORNEY WATKINS: I will.

THE COURT: The government knows all my prior rulings. I don't anticipate the government is going to just try to walk all over them and violate those rulings, but I do expect the government is going to push, you know, and try to push a little further than last time and try the case a little differently. That's their role in being advocates. So, yeah, all I'm saying is I think we're all in a good situation to deal with it. But if you're looking for a highlight of the openings, file some type of appropriate motion.

ATTORNEY WATKINS: With that, that's all I have, Your Honor.

THE COURT: Okay.

ATTORNEY BRESLOW: Your Honor, will the court be issuing any additional written guidance concerning the

COVID proceedings, or there is anything the court wishes to discuss with us about that?

THE COURT:  Of what?

ATTORNEY BRESLOW:  The special procedures for the trial given the current state of the pandemic.

THE COURT:  The current state of the pandemic I think -- I haven't talked to our clerk's office nor our chief judge regarding any changes.

The trial is still going to look and feel very much like it did the last time with mask wearing, separation, jurors separated on the floor.  You know, the chairs are going to be on the floor, two witness stands, masks for everyone in the courtroom, cleaning of the witness stand. After two people testify, we clean the witness stands. That's what it's going to look like from a COVID point of view.

So we will be doing the attorney-conducted voir dire similar to how we did it the last time.  I need to consult with Ms. Healy and Ms. Rivera about whether or not we will be able to do it a little differently because now we can have I think some more people, some more bodies in the room.

So instead of relying upon a group of jurors that have to remain on our video screen, we might be able to just roll through different groups for the

attorney-conducted voir dire in a more efficient way, but I don't know.  I haven't planned that yet with the clerk's office.  We will let you know as soon as we have a plan in place.

ATTORNEY BRESLOW:  Okay.  I know this is so much case specific but office specific, I know there was a question in our office about whether there would be a grand jury during any dates of trial.  I think the last time the court had asked us not to have grand jury during trial weeks.

THE COURT:  Right.  That's for total number in the building.  The guidelines have changed a little bit. I need to ask the clerk's office regarding that. Obviously if it can be avoided, then that would be the preference.

ATTORNEY BRESLOW:  Right.  We understand.

THE COURT:  But if you think you need to be, we might be able to accommodate it this time, but certainly avoiding it would be the preference.  Do you think you're going to need grand jury, or is it too early to tell?

ATTORNEY BRESLOW:  We will be wanting to know did the court have a particular specific policy?  If what you're articulating is what you'd like us to convey to the office, we have a meeting today where we will discuss this with the group and see if anybody anticipates a need

during any of those two weeks of trial for us.

THE COURT:  Right.  I'd like to avoid it but if you can't avoid it, just let us know the days ahead of time.

ATTORNEY BRESLOW:  Okay.

THE COURT:  Steve, it might be hard to avoid because we have another trial scheduled right after that, so.

ATTORNEY BRESLOW:  I know.

THE COURT:  There's some cases that you just can't put off that long.

ATTORNEY BRESLOW:  Okay.  So we will caucus as a group and then let Christina know.

THE COURT:  Okay.  Because the sooner the clerk's office knows, the more they can kind of move around their people and find ways to deal with it.  All right.  Sounds good.

CLERK RIVERA:  Are we all set?

THE COURT:  We are all set.

CLERK RIVERA:  Okay.

**(Hearing concluded at 10:24.)**

---------------------

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    )

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. This transcript was prepared to the best of my ability via a telephone conference held by the Court.

(The certification of this transcript does not apply to any reproduction of this transcript, unless under the direct control and/or supervision of the certifying reporter.  I assume no responsibility for the accuracy of any reproduced copies not made under my control or direction.)

/s/ Alice Moran                                    May 30, 2022
Alice Moran, RMR, RPR
Federal Official Court Reporter