1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION


United States of America    )
                            )        20cr30018-MGM
     vs                     )
                            )        June 15, 2021
John Michael Rathbun        )
_____ )



TRIAL HELD BEFORE THE

HONORABLE JUDGE MARK G. MASTROIANNI.


APPEARANCES:


On behalf of the government:  Neil L. Desroches, Assistant United States Attorney, 300 State Street, Suite 230, Springfield, MA 01105.

Steven H. Breslow, Assistant United States Attorney, 300 State Street, Suite 230, Springfield, MA 01105-2926.


On behalf of the defendant: Timothy G. Watkins, Esq., 51 Sleeper Street, 5th Floor, Boston, MA 02210.

Forest J. O'Neill-Greenberg, 51 Sleeper Street, 5th Floor, Boston, MA 02210.


Alice Moran, CSR, RPR, RMR
Official Federal Court Reporter
United States Courthouse
300 State Street, Room 303D
Springfield, MA 01105
(413)731-0086
alice.moran@verizon.net

INDEX

Witness:                                                    Page:


None


Exhibit No.           Description                        Page


1          Jury note                                     57

2          Jury note                                     58

**(Trial commenced at 9:18.)**

**(The defendant is present.)**

CLERK RIVERA:  The case before the court, criminal matter 20-30018, the United States of America versus John Rathbun.

Can counsel please identify themselves for the record?

ATTORNEY DESROCHES:  Good morning, Your Honor. Neil Desroches on behalf of the United States.

ATTORNEY BRESLOW:  Steven Breslow for the United States.  Good morning, Your Honor.

THE COURT:  Good morning.

ATTORNEY WATKINS:  Tim Watkins, Federal Defender Office, on behalf of John Rathbun who is here with us in court.  Good morning.

THE COURT:  Good morning.

ATTORNEY O'NEILL-GREENBERG:  Forest O'Neill-Greenberg also for Mr. Rathbun.

THE DEFENDANT:  Good morning, Your Honor.

THE COURT:  Good morning.

All right.  We have to deal with the government's opposition to the voluntary intoxication instruction. I'll give each side two minutes for whatever you want to say.

Christina, please hold them to two minutes because I

have looked at this.  I spent some time this morning looking at this and considering it.

So go ahead.

ATTORNEY DESROCHES:  Thank you.

Your Honor, considering the time limits, I'll focus just on the record knowing that the court has reviewed the law.

Your Honor, in this case the record is completely devoid of any evidence of the affect that crack had on the defendant on the morning of April 2nd.

In fact, the record, which comes from text messages and the defendant's testimony, shows that the defendant was able to form rational thought.  He was sending text messages, driving a vehicle, seeking out particular individuals for drugs which he had gotten from them before, trying to make arrangements to put the drugs in the mailbox, and so I would suggest this shows some higher level of functioning that is much beyond the limit of -- sorry, this shows clearly that the defendant was capable of forming specific intent.

The defendant testified and did not ever -- there's no evidence that the defendant was so intoxicated that he couldn't form the specific intent.  He was capable of answering these questions.

The defendant never argued that the defendant could

not form this intent.  In fact, they denied that he did this act entirely.  There was never an alternative theory posed to the jury.

The defendant testified in general the effects of crack on him and that that makes him want to do things and make him energetic.  Go-go-go I believe is his term.  So there is no evidence that the defendant was so overcome by his intoxication.

Secondly, the defendant argued about the motel incident in Chicopee, a time in which he did poly substances, much than he did on April 2nd, and they argued he was capable of rational thought then.

So I would suggest, Your Honor, this record does not support this instruction.  The case law supports the government's position that it's not warranted at this point, and I'd ask that the court not instruct the jury on voluntary intoxication.

THE COURT:  Okay.  Thank you.

ATTORNEY WATKINS:  The question is not whether the evidence is sufficient to support a verdict of not guilty.  The question is whether there is record evidence, and indeed there is ample record evidence.  It started at the beginning of the case.  It started with the Chicopee case where the government's specific idea was to elicit that Mr. Rathbun was out of his mind and they continued on

that theme.

They asked Mr. Rathbun whether he was out of his mind on drugs on the Chicopee event and then argued it in the closing.  I don't know what out of one's mind means other than the lack of specific intent, the lack of logic.

Obviously again the standard is not whether the defense is a good one or either whether the defense is arguing that particular theory.  It's whether there's record support and indeed there is.  The government has fought to get it in from the first.

It does bring in -- so I think this is an easy question, Your Honor, that there is plenty of record evidence.  Whether it's brought in by the government or the defense simply doesn't matter.  It's certainly true that ordinarily it would be the defense that brings it in, but in this somewhat bizarre set of circumstances where the government wanted this, they simply cannot now cry foul that the court is going to instruct on it.

It does brings in a larger issue.  Once again, Your Honor, perhaps sounding like a broken record at this point, the government specifically brought in that evidence because it wanted to prove state of mind on April 2nd and is now arguing that that has nothing to do with it and so little relevance to it that indeed the court can't do anything about that evidence once it's in.

Then we're right back to day one, why did they bring this evidence in of the Chicopee motel?  The context, what they called context evidence where they are now disavowing that it had any effect on his state of mind and for that reason, Your Honor, once again, I'd move to strike that evidence and I'd ask the court to grant a mistrial.

ATTORNEY DESROCHES:  Your Honor, may I respond to the rhetorical questions posed by the defendant?

THE COURT:  Sure.

ATTORNEY DESROCHES:  The government brought in the context evidence of the motel to show that this was adding to the defendant's feeling of hypocrisy and adding to his agitation; not to show that he was acting in compliance with previous propensity evidence.

THE COURT:  I understand.

ATTORNEY DESROCHES:  Thank you.

THE COURT:  I understand.  I think the government's correct with what they just said as to the reason they brought it.  It's a fine line though.  It's a really fine line, and this was an odd situation where the defense could have made its primary defense one of state of mind intoxication.  It's tactical considerations. These are the classic decisions you make when you're putting on a defense.  Should you try to put forward one, two, or three defense at the same time?  Which do you

choose?

This is a retrial. The defendant had testified at the first trial kind of, you know, laying the mode of what would happen and so this is some very interesting background.

At any rate, the defendant filed a request for an intoxication instruction, I don't know when it was, over the weekend, perhaps early Monday morning. Whenever you filed it recently, the government clearly had notice of it and looked at it.

Yesterday when I talked about jury instructions, I specifically highlighted for both parties some parts. I said, look, we red lined some things. We changed some things, but what you have to focus on I said look at unanimity for the aiding and abetting and look at this intoxication and so I brought it everyone's attention. People looked at it. Both sides said they were satisfied with it. So that's the first point.

Knowledge "and" intent is the jury instruction for Count 1 that both parties agreed on. Knowledge "and" intent. I made a quick comment yesterday although the statute says knowledge "or," it uses the word or instead of and. I don't know if I'm putting the intent and knowledge, misplacing where they go but it's both. It's and in the jury instructions.

I clearly think that the government raised this issue for their purpose of showing how that decision, without motive really, but how a decision like that could have been made, and that was the context evidence of what's going on in Mr. Rathbun's life.

The other side of that is, it just has to be the natural conclusion and flow from that is that the jury also has to consider the possible intoxication defense that can go with it.

The government elicited evidence of an almost routine daily use of drugs or search for drugs, including finding drugs.  That last picture that was introduced on the defendant and in his lighter and the paraphernalia and the crack pipe, so it is an issue.  It certainly is an issue.

The defendant saying I was functioning, I was driving, I was making these decisions does not take away from the possibility that the jury could evaluate and think that his mental functioning was compromised by drugs because they may choose not to accept a lot of his testimony, some of it, all of it.

They might think he -- they may question his decisions and his ability to think clearly throughout the day on any given day because of his use of drugs.  And they may view his testimony as tainted in some way by that and have to view his testimony as saying I'm viewing

someone who, you know, I have to consider that everything they tell me in their view of the entire world is one that's affected by drugs.

The government gave a specific example of the Chicopee motel incident where he had the knowledge that he was calling the police. I'm pressing 911 or whatever I'm doing, I know you're a police officer. I have this knowledge, but he made such a ridiculous decision knowing that all those drugs were up in his room and it would have been likely to any reasonable person that if I call the police and say this, they're probably going to come in the room and find the drugs.

The government is showing that shows a clear state of mind? I think that shows a completely impaired state of mind. I know that I'm calling the police and I want them to come here, and I'm not even registering in my brain that I have so many drugs in my room that they could come up to my room and see that. I think that shows an impairment of your ability to form an intent.

Now the government is making the opposite argument. I'm not the jury, but I think it's a fair -- I think it's a fair consideration for the jury to think about whether or not there was, number one, was there a level of intoxication at the exact time?

And you're right, there's no evidence like right at

that time, we don't know.  We just know there's phone calls trying to get it, but the jury is allowed to draw certain inferences from the daily life of Mr. Rathbun.

Long story short, I think it's fair.  I think it's fair to have it in there.  You know, the government argued the use of drugs for their purpose.  I don't think the defendant had to pick up that flag and wave it as their primary defense.  I think it's there.  It's been put out there, and it's ultimately fair to let the jury consider.  So we're going to leave it in.

ATTORNEY WATKINS:  Judge, there is one other matter.  Upon reflection, yesterday evening and then again this morning, I want to focus on an argument that the government made.  It's very specific about the Route 91 route.

During the closing the government focused on the fact that we had focused on the upper limit of 91, the 7 minutes and 12 seconds and say why didn't the defense consider this on the lower side?

Upon reflection again, that suffers from two problems:  One is it asks the jury to speculate.  As the court will recall, that's what the CSLI expert Ryan Burke told us is that there's no way to determine one or the other.  And it also shifts the burden to the defense to, at that point, present some kind of alternative evidence

about why it couldn't have about been that first blob as we started to call it that Mr. Rathbun was in.

So I think those arguments are inappropriate and I'd ask the court to tell the jury to strike that argument, and that they're not to speculate about why -- that the defense has no obligation to prove any part of its case, and they have no obligation to -- or they cannot speculate about those kinds of matters.

THE COURT:  All right.  The final instructions include language about not speculating and on the burden, so your specific request at this point is denied.

Also I think you made a -- did you renew a required finding request?

ATTORNEY WATKINS:  I'm sorry?

THE COURT:  Did you renew a required finding request in your opposition to the government's asking to withdraw the intoxication?

ATTORNEY WATKINS:  I orally moved for a required -- I'm sorry, after, I orally moved after.

THE COURT:  This morning, I just want to make sure I addressed any motion that you might have asked for this morning.

ATTORNEY WATKINS:  This morning, no.  Yesterday at the close of the government's case.

THE COURT:  I thought you might may re-raised

that this morning.

ATTORNEY WATKINS:  No.  It was simply that argument issue.

One final housekeeping.  I did -- we did object specifically to the failure to give a -- not the failure, the court's giving the consciousness of guilt.

THE COURT:  Right.

ATTORNEY WATKINS:  There was one other instruction that we asked the court to give, and that was the failure to record --

THE COURT:  Right.  Right.

ATTORNEY WATKINS:  -- Mr. Rathbun's interview.

THE COURT:  Right.

ATTORNEY WATKINS:  This was from the first case. It's docket entry 155.  I'm simply going to --

THE COURT:  Well, that reference is in there.  I mean, there is -- I did specifically include, I don't have the page in front of me, but about statements that you can consider all options available, all requirements, all objections.

Can you give me the page by any chance, Maggie?

ATTORNEY WATKINS:  The court is quite right.  I withdraw that.

THE COURT:  Can you tell me what page it's on just so I know?

ATTORNEY O'NEILL-GREENBERG:  Twenty-three.

ATTORNEY BRESLOW:  Yes, it's there.

THE COURT:  So I did put it in there.  All right.  Thanks.  All right.  So that's withdrawn, the objection?

ATTORNEY WATKINS:  There's particular language that we asked for and this is --

THE COURT:  I didn't give you your language I know, but I put the concept you were looking for in the instruction.

ATTORNEY WATKINS:  That is the content that we were looking for.  We would ask that the jury be further instructed that they should exercise great caution and care about the testimony about which the defendant has --

THE COURT:  All right.  I did put the concept in that you were looking.  At this point it seems like you're getting greedy.

ATTORNEY WATKINS:  One can always wish.

THE COURT:  There you go.  All right.

CLERK RIVERA:  Ready?

THE COURT:  Yeah.

**(The jury entered at 9:37.)**

THE COURT:  Good morning, everyone.  You can sit down.

All right.  Did everyone follow my instructions not

to talk to each other about this case or anyone else about this case? Did you follow all of my other instructions that I give every time you leave the courtroom?

THE JURY: (Yes.)

THE COURT: All right. Affirmative answers from all jurors, they remain fair and impartial.

All right. So the process of the jury instructions is me reading the instructions. And to kind of make this a little more engaging and helpful for you, we put it up on the screen so you can follow along. The only challenge will be for you about your ability to see. This is like an eye doctor exam. So you can read the second line for me? (Laughter) Or you can move over and look at that screen. Okay?

Remember a couple copies of the printed instruction will be with you when you deliberate. The instructions are broken down into two pieces. The first section might be the longer section. It's all the general instructions that are applicable to cases and how you consider evidence, and then it splits. The second part will be the specific charges in this case and the elements of the charges and things specific to this case.

All right. You have heard the evidence and the closing arguments in this case. I'm just checking, everything is up. Okay.

It is now my duty to instruct you on the law that you must follow and apply.  These instructions are somewhat complicated, and I ask you to pay very careful attention.  You will also have a copy of the instructions in the jury room with you.

The instructions cover several subject areas:  Duties of the jury, presumption of innocence of Mr. Rathbun, government's burden of proof, evidence, specific instructions about the charges against Mr. Rathbun, the verdict form, and communication with the court.

Throughout these instructions, I will refer to Mr. Rathbun by his name or as the defendant.

Under duties of the jury, you have been chosen and sworn as jurors to decide the issues of fact presented in this case by the allegations the government has made against Mr. Rathbun.

It is your duty to find the facts from the evidence admitted in this case.  You are the sole judges of the facts.  You shall determine the weight, value, and effect of the evidence that has been presented to you in the course of the trial.

You must determine the facts, without fear or favor, based solely on a fair consideration of the evidence and without bias or prejudice to any party.  Our system of law does not permit jurors to be governed by sympathy,

prejudice, public opinion, or consideration of or speculation about any potential punishment.

All of the parties and the public expect that you will carefully and impartially consider all the evidence in this case; follow the law as stated by the court and reach a just verdict, regardless of the consequences. All parties stand equal before the law and are to be dealt with as equals in a court of justice.

It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. Even if you disagree with one or more of the rules of law or don't understand the reasons for them, you are bound to follow them. This is a fundamental part of our system of government by law, rather than by the individual views of the judge or jurors who have the responsibility of deciding a case.

In following my instructions, you must follow all of them and not single out some and ignore others. They are all equally important. Consider these instructions as a whole and apply them sensibly and faithfully in your deliberations.

Nothing I say in these instructions is to be taken as an indication that I have an opinion about the facts of the case or what the opinion might be. It is not my function to determine the facts. It is yours.

All of my instructions are about the law that you must apply.  I do not intend for any of my instructions to be understood by you as a comment by me on the facts or on the evidence in this case.

Opening statements or closing arguments may have comments on some of these rules of law.  But if what was said about the law differs in any way from my instructions, you must be guided only by the instructions on the law as I state them.

Defendant's presumption and Government's burden.  It is a cardinal principle of our system of justice that every person accused of a crime is presumed to be innocent unless and until his or her guilt is established beyond a reasonable doubt.

The presumption is not a mere formality.  It is a matter of the most important substance.  The presumption of innocence alone may be sufficient to raise a reasonable doubt and to require the acquittal of a defendant.

The defendant has the benefit of that presumption throughout the trial, and you are not to convict him unless you are persuaded of his guilt of that charge beyond a reasonable doubt.

The presumption of innocence until proven guilty means that the burden of proof is always on the government to satisfy you that the defendant is guilty of the crimes

with which he is charged beyond a reasonable doubt.  This is a strict and heavy burden, but it does not mean that his guilt must be proved beyond all possible doubt, as there are few things in this world that we know with absolute certainty.  It does require that the evidence exclude any reasonable doubt concerning his guilt.

A reasonable doubt may arise not only from the evidence produced but also from a lack of evidence. Reasonable doubt exists when, after weighing and considering all the evidence, using reason and common sense, jurors cannot say that they have a firmly settled conviction of the truth of the charge.

Of course, a defendant is never to be convicted on suspicion or conjecture.  If, for example, you view the evidence in the case as reasonably permitting either of two conclusions -- one being that the defendant is guilty as charged, the other being that the defendant is not guilty -- you will find the defendant not guilty of that charge.

It is not sufficient for the government to establish a probability, through a strong one, that a fact charged is more likely to be true than not.  That is not enough to meet the burden of proof beyond a reasonable doubt.

Moving to evidence.  Your verdict must be based solely upon the evidence and according to the law.  In

reaching your decision as to whether the government has sustained its burden of proof, it would be improper for you to consider anything that is not evidence.

Your verdict should be based solely upon the evidence or lack of evidence as to this defendant, without regard to whether the guilt of any other person or persons has or has not been proven.

You may not base your verdict on any personal feelings, any type of prejudice or sympathy you may have about the government or the defendant or about the nature of the crimes charged. The government and the defendant stand equal before the law.

You have heard evidence that Mr. Rathbun was held in jail for a period of time. The fact that the defendant was in jail is irrelevant to this case and must not enter into or affect your verdict. Just like any other individual, Mr. Rathbun stands equal before the law and he is to be treated as an equal in this court, just like any other person of equal standing in the community. You may not use this information to infer that, because he had been in jail, he carried out the acts charged in this case or is guilty of the offenses he has been accused of.

The defendant is presumed innocent of these charges unless and until the government proves beyond a reasonable doubt the charges he is now on trial for.

As to relevance, in these instructions I will refer to evidence you may consider as being relevant. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact which the evidence relates to is of consequence in making a determination on any charge.

Now although the government is required to prove a defendant guilty beyond a reasonable doubt, the government is not required to present all possible evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case.

In addition, as I have explained, the defendant is not required to produce any evidence or produce any witnesses.

The evidence in this case consists of the sworn testimony of witnesses, regardless of who called the witness and regardless of who asked the questions; the exhibits that have been received into evidence, and any facts to which the lawyers have agreed or stipulated.

Certain things are not evidence. Arguments and statements by attorneys are not evidence. They are not witnesses. What they say in their opening statements and closing arguments is intended to help you interpret the evidence, but it is not evidence.

If the facts as you remember them from the evidence

differ from the way they have stated them, or the way that the court referenced them, your collective memory of the facts should control.

Questions asked of witnesses, standing alone, are not evidence. The questions and the witnesses' answer taken together are the evidence.

Objections are not evidence. Parties have a right to object when they believe a question is improper under the rules of evidence. You should not be influenced by any objection or by my ruling on it.

If an answer or exhibit is excluded, you should not speculate or guess about what the answer might have been or what an exhibit might have shown. Anything that I have excluded from evidence or ordered stricken from the record and instructed you to disregard is not evidence.

Anything you may have seen or heard when the court was not in session is not evidence. You are to decide this case solely on the evidence received at trial. Any evidence received for a limited purpose is not evidence for any other purpose.

Now during the trial, I indicated for you what evidence was received for a specific limited purpose and exactly what the limited purpose is. You heard testimony about acts defendant is said to have done in the month before the act he is charged with committing in this case.

As I instructed you during the trial, this evidence was admitted only for a limited purpose and you may not consider evidence of those acts for any other purpose. You may not use this testimony to infer that, because of his character, defendant carried out the act charged in this case.

The evidence admitted for a limited purpose may be considered by you, if you find it necessary or relevant and appropriate, only for the limited purpose of deciding whether the defendant did or did not have the state of mind or intent necessary to commit the crimes charged.

Latter in these instructions, I will instruct you about the specific state of mind or intent required to be guilty of the charged offenses and certain considerations you may give to evidence of voluntary intoxication.

During the course of the trial I may have made comments or spoken to a witness concerning their matter of testifying. Do not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions about disregarding evidence that I ordered stricken from the record, you should not consider anything I may have said during the trial in arriving at your own findings as to the facts.

The defendant has been charged by way of indictment. You are not to draw any adverse inferences against the

defendant from the fact that he was indicted.  The indictment is simply an assertion of the charges against the defendant.  It is not evidence of anything.  The defendant has pled not guilty and therefore he denies that he is guilty of the crimes charged in the indictment.

He is presumed innocent and may not be found guilty by you unless all of you, the trial jurors, unanimously find that the government has proven his guilt beyond a reasonable doubt.

Now as to the kinds of evidence.  There are two kinds of evidence - direct evidence and circumstantial evidence. Direct evidence is when a witness testifies about something they know by virtue of their own senses, something they have seen, felt, touched, or heard.  A document can also constitute direct evidence.

An example of direct evidence could be a simple assertion by someone that it is raining outside.  If you thought the person who said that to you was truthful and had a sufficient basis for knowing what the weather was like outside, you could accept the statement as direct evidence that it is raining outside.  Alternatively, if you doubted the reliability of the statement, you could reject it.

Now circumstantial evidence is indirect evidence that tends to prove a disputed fact by the existence of other

facts based upon using reason and common sense.

To illustrate an example of circumstantial evidence, return to the prior example regarding the weather outside. Suppose you are in a courtroom and you cannot look outside. Now suppose that instead of having someone report to you about the weather condition, someone just comes in from outside wearing a wet raincoat and shaking water off an umbrella.

Without any words being spoken -- that is, without any direct statement or assertion being made -- an observer might conclude that it was raining outside. The observer, thinking about the wet raincoat and dripping umbrella, might draw a conclusion or an inference about an unobserved fact. That it was raining.

When assessing circumstantial evidence, the inference from the evidence need only be reasonable. It need not be the only one possible. Inferences may not, however, be based on speculation or conjecture.

You are entitled to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, or to give greater weight to one or the other. It remains for you to decide how much weight to give any particular piece of evidence.

There are different categories of evidence that you have before you. This includes exhibits and witness

testimony and so I'll instruct you about each form.

First, you have a number of exhibits.  Many of these exhibits have been shown to you in the course of the presentation of evidence.  You may consider the exhibits in your deliberations and give them whatever value or significance you think appropriate.  You will have the exhibits that have been introduced in evidence during the course of the trial with you in the jury room.

Some of the exhibits are in the form of charts and summaries.  Any charts or summaries that were admitted as evidence should be considered in the same way you would consider any other evidence.  You may give them whatever value or significance you think appropriate.

If a summary or chart includes information that is based on witness testimony or other evidence or exhibits, you may consider whether the chart or summary correctly presents that information.  Other charts and summaries were shown to you that were not admitted as evidence.  These charts and summaries were shown to you in an attempt to aid you in considering the evidence that was admitted.  Those documents will not be with you in the jury room and are not themselves independent evidence.  It is for you to decide whether they correctly presented information contained in the testimony and admitted exhibits on which they were based.  You may only consider them to the extent

they help you analyze or understand admitted evidence.

In addition to exhibits, you have heard the testimony of witnesses. You do not have to accept the testimony of any witness if you find the witness not credible. You must decide which witnesses to believe and which facts, as testified to by the witnesses, are true. To do this, you must look at the witness testimony in the context of all the evidence, drawing upon your common sense and personal experience.

You may believe everything a witness says or only part of it or none of it. It is entirely up to you. You may also decide how important a witness's testimony is relative to the other evidence.

In judging the credibility of any witness, you may want to take into consideration such factors as the witness's conduct and demeanor while testifying; their apparent fairness or any biases or prejudices they may have shown; their relation to either party; any interest they may have the outcome of the case; their opportunities for seeing and knowing the things about which they have testified; the reasonableness or unreasonableness of the events they have described; and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict their versions of the events.

The following are kinds of questions you may want to

consider in evaluating a witness's credibility:  Did the person seem honest?  Did they have some reason not to tell the truth?  Did the witness have an interest in the outcome of the case?  Did they gain any personal advantage by testifying in this case?  Did the witness seem to have a reliable memory?  Did the witness's testimony differ from their earlier testimony or from the testimony of other witnesses?  Was the witness's testimony different on cross-examination and direct examination?  What was the witness's manner while testifying?  If a witness made an identification, did that witness have sufficient personal knowledge and history of contact to make a reliable identification?

These are some, but not all, of the things, the kinds of things that will help you to decide how much weight to give to what each witness said.

Now the mere number of witnesses or exhibits or the length of the testimony has no bearing on what weight you give to the evidence or on whether you find that the burden of proof has been meet.

Weight does not mean the amount of evidence.  Weight means your judgment about the credibility and importance of the evidence.  Whether the government has sustained its burden of proof depends upon the nature and quality, not quantity, of the evidence presented.

You may have heard testimony about lawyers speaking to witnesses about the case before the witness testified at trial.  The law permits an attorney to prepare witnesses for trial, including reviewing with the witness the questions that will or may be asked at trial.

You may have also heard testimony that a witness read or reviewed certain materials pertaining to the case before the witness testified at trial.  The law does permit a witness to do so.  Permitting witnesses to review materials pertaining to the case before the witness testifies is a normal part of preparing for trial.  It is not improper, as long as it is not suggested that the witness depart from the truth.

You have heard testimony of law enforcement officers. The fact that a witness is employed as a law enforcement officer does not mean that their testimony necessarily deserves more or less consideration or greater or lesser weight than that of any other witness.

You must decide, after reviewing all of the evidence, whether you believe the testimony of the law enforcement witnesses and how much weigh, if any, it deserves.

As to inferences, although you may consider only the evidence presented in this case, in considering that evidence, you are not limited to the explicit statements made by the witnesses or contained in the documents. In

other words, you are not limited solely to what you see and hear as the witnesses testified.

From facts that you find to have been proven, you are permitted to draw such reasonable inferences as you believe are justified in the light of common sense and personal experience.  But you may not base your verdict on any personal feelings, any type of prejudice, or sympathy you may have about the government, the defendant, or the nature of the crimes charged.  As I have said, the government and the defendant stand equal before the law.

As to inconsistencies, inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony.

Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection or incorrect recollection, is not an uncommon experience.

In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail, and consider whether the discrepancy results from innocent error or intentional falsehood.

The testimony of a witness may be discredited or impeached by showing that they previously made statements

that are inconsistent with his or her testimony in the trial.  If a witness has shown to have given inconsistent statements concerning any material matter, you have a right to distrust that witness's testimony in other respects.  You may reject all of the testimony of that witness or give it such credibility as you may think it deserves.

As I just noted, sometimes, of course, people make innocent mistakes, particularly as to unimportant details.  No every contradiction or inconsistency is necessarily important.  Again, you alone are the judges of the witness's credibility.

Statements of the defendant.  You have heard evidence that the defendant made certain statements.  It is for you to decide, number one, whether the defendant made a statement.  And, number two, if so, how much weight to give it.

In making those decisions, you may consider all of the evidence about the statement, including the circumstances under which the statement may have been made and the procedures that were specifically required or could have been used to memorialize, record, or report the statement.

You may also consider any facts or circumstances tending to corroborate or contradict the version of events

described in the statement.

You have heard evidence that the defendant made certain statements outside the courtroom to law enforcement authorities in which the defendant claimed that his conduct was consistent with innocence and not with guilt.  The government claims that these statements are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required, to infer that the defendant believed he was guilty.  It is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

You may not, however, find on the basis of consciousness of guilt along that the defendant is in fact guilty of any crime for which he is charged.

In your evaluation, you may consider that there may be reasons for the defendant's statements that are fully consistent with innocence.  Fear of law enforcement, reluctance to become involved, simple mistake, confusion, or nervousness may cause an innocent person to give such statements.

Moreover, feelings of guilt, which are present in many innocent people, do not necessarily reflect actual

guilt.  Whether the evidence as to the defendant's statements show a consciousness of guilt and the significance, if any, to be attached to any such evidence, are matters for you as the jury to decide.

During this trial, exhibits were admitted into evidence that consisted of conversations that were recorded.  This is proper evidence for you to consider. In order to help you, I allowed you to have a transcript to read along as the tape was played.  However, the transcript was merely to help you understand what was said on the tape.  If you believe at any point that the transcript said something different from what you heard on the tape, remember it is the tape that is the evidence, not the transcript.

Any time there was a variation between the tape and the transcript, you must be guided solely by what you heard on the tape and not by what you saw in the transcript.

The government has offered evidence in the form of tape recordings of conversations with the defendant. These recordings were made with the knowledge and consent of the defendant and the other party to the conversation. The use of this procedure to gather evidence is perfectly lawful, and the government is entitled to use the tape recordings in this case.

One of the issues in this case is whether the defendant was present at the time and place of the alleged crimes.  If, after considering all the evidence, you have a reasonable doubt that the defendant was present and you do not find that he aided and abetted someone else who carried out the crime, then you must find the defendant not guilty.

You have heard evidence that the defendant may have been intoxicated due to drugs on April 2, 2020 at the time of the charged offenses.  Some degrees of intoxication may prevent a person from having the state of mind or intent necessary to commit the crimes charged.

If after considering the evidence of intoxication, together with all the other evidence, you have a reasonable doubt that the defendant had the state of mind or intent necessary to commit the crimes charged, then you must find defendant not guilty.

The government charges that the offense were committed on or about specific dates.  The government does not have to prove that the crimes were committed on the exact dates, so long as the government proves beyond a reasonable doubt that the defendant committed the crimes on dates reasonably near the dates stated in the indictment or charges.

Stipulations.  The evidence, the evidence in this

case includes facts to which the lawyers have agreed or stipulated.  And as I have told you, a stipulation means simply that the government and the defendant accept the truth of a particular proposition or fact.  Since there is no disagreement, there is no need for evidence apart from the stipulation.  You must accept the stipulation as fact, to be given whatever weight you choose.

Now under your oath as jurors you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he was to be convicted, to influence your verdict in any way, or in any sense enter into your deliberations.  The duty of imposing any sentence rests exclusively with the court.  Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.

As I indicated at the beginning of the trial, you were permitted to take notes, but cautions do apply as you begin deliberations.  You should bear in mind that not everything that is written down is necessarily what was said.  Thus, when you return to the jury room to discuss the case, do not assume simply because something appears in someone's notes that it necessarily took place in court.

You should use your notes only to assist you to

recall what you have seen, heard, or observed during the trial of this case.  And whether or not you took notes, you must rely on your own memory in the jury room.

At the end of each day that you may be deliberating, your notes will be collected.  No one will be allowed to view them.  In addition, to ensure confidentiality of your deliberations, after you have reached and returned your verdicts in open court, we will collect and destroy any notes that any of you may have taken.  Your notes will not be examined by anyone.  They will simply be destroyed.

Now I've told you this, you will not be given a transcript of the trial.  The court reporter, as you know, has a difficult job creating a raw record and it is a process to turn that final raw record into a final transcript.  It is not possible to create the transcript in time for deliberations.  Since you will not have a transcript, you should rely instead on your collective memory of the evidence.

All right.  That takes care of the general instructions.  I'm now going to just take a second and we're going to move on to the actual law in this case. All right.

All right.  The elements of the charges:  Count 1, 18 United States Code Section 844(D)(2), attempt to transport and receive and transportation  and receipt of an

explosive; aiding and abetting.

Count 1 charges that on or about April 2, 2020, the defendant violated 18 U.S.C. Section 844(D), which provides that, whoever transports or receives or attempts to transport or receive in interstate commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual, or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be guilty of an offense.

To prove Count 1, the government must have proved the following elements beyond a reasonable doubt:  That on or about April 2, 2020, number one, the defendant transported or received, or attempted to transport or receive, in interstate commerce; number two, an explosive; and number three, the defendant had the knowledge or intent that the explosive would be used to kill, injure, or intimidate any individual, or that it would be used unlawfully to damage or destroy any building, vehicle, or other real or personal property.

I will now instruct you further on some of these elements.  Attempt, element number one, to prove the element of attempt to transport or receive an explosive as charged in Count 1, the government must prove the following two things beyond a reasonable doubt:  Number

one, the defendant intended to commit the crime of transporting or receiving in interstate commerce an explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual, or that it will be used to unlawfully damage or destroy any building, vehicle, or other real or personal property; and, number two, the defendant engaged in a purposeful act that, under the circumstances as he believed them to be, amounted to a substantial step toward the commission of that crime and strongly corroborated his criminal intent.

A substantial step is an act in furtherance of the criminal scheme.  A substantial step must be something more than mere preparation but less than the last act necessary before the substantive crime is completed. The substantial step may itself prove the intent to commit the crime, but only if it unequivocally demonstrates such an intent.

Interstate commerce.  To prove the explosives -- to prove that the explosives the defendant is charged with transporting or receiving or attempting to transport or receive was in interstate commerce, the government must prove that at sometime prior to the defendant's possession the explosive or any of its components had traveled in interstate commerce.

It is sufficient for the government to satisfy this

element by proving that at any time prior to the date charged in the indictment the explosive or any of its components crossed a state line.

It is not necessary that the government prove that the defendant himself carried it across a state line.  Nor must the government prove who carried it across or how it was transported.  It is also not necessary for the government to prove that the defendant knew that the explosive had previously traveled in interstate commerce.

In this regard, the parties have stipulated that the components of the explosive in question were manufactured outside of the State of Massachusetts.  You are permitted to infer from this fact that these components traveled in interstates.  However, you are not required to do so.

As to explosive, for these purposes an explosive is, number one, any device that contains ingredients in such proportions, quantities, or packing that ignition by fire may cause an explosion; or, number two, other explosive or incendiary devices.

For the purpose -- I'm sorry.  For these purposes an explosive or incendiary device includes any incendiary bomb or grenade, firebomb or similar device.

This includes, but is not limited to, any device which consists of or includes a breakable container, including a flammable liquid or a compound, and a wick

composed of any material which, when ignited, is capable of igniting such flammable liquid or compound and which can be carried or thrown by one individual acting alone.

The term explosion is used in its customary and ordinary sense; that is, an explosion is a rapid expansion of gases caused by a rapid combustion of material, which may cause a loud noise.

As to element number three, knowledge or intent, for these purposes, knowledge or intent means that the defendant knew and intended that the explosives or its components would be used to injure, kill, or intimidate individuals, or to damage or destroy a building, vehicle, or other real or personal property.

Count 2, 18 U.S. States Code Section 844(I), attempt to damage and destroy buildings, vehicles and real and personal property by fire and explosive; aiding and abetting.

Count 2 charges that on or about April 2, 2020, the defendant violated 18 U.S.C. Section 844(I) which provides that whoever attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate commerce or in any activity affecting interstate commerce or foreign commerce shall be guilty of an offense.

To prove Count 2, the government must have proved the

following elements beyond a reasonable doubt:  That on or about April 2, 2020, number one, the defendant maliciously attempted to damage or destroy a building, vehicle, or other real or personal property; number two, the defendant attempted to do so by means of fire or an explosive; and, number three, the building, vehicle, or other real or personal property was used in interstate commerce or was used in any activity that affects interstate commerce.

So I'll now instruct you further on some of these elements.  Element one, the term "maliciously" means that the defendant acted either intentionally or with willful disregard of the likelihood that damage or injury will result and not mistakenly or carelessly.

The word "attempt" in element number one, the definition of attempt for Count 2 is like that for Count 1.  To prove the element of attempt to damage or destroy as charged in Count 2, the government must prove the following two things beyond a reasonable doubt.  Number one, the defendant intended to commit the crime of damaging or destroying by means of fire or an explosive any building, vehicle or real or personal property; and, number two, the defendant engaged in a purposeful act that, under the circumstances as he believed them to be, amounted to a substantial step towards the commission of that crime and strongly corroborated his criminal intent.

As I have said, a substantial step is an act in furtherence of the criminal scheme.  A substantial step must be something more than mere preparation but less than the last act necessary before the substantive crime is completed.  The substantial step may itself prove the intent to commit the crime, but only if it unequivocally demonstrates such intent.

Fire or explosive from element number two.  The second element requires that the defendant attempted to use fire or an explosive.  You do not need to find that the fire or explosion actually occurred.  For purposes of this element, fire has its ordinary meaning and you may refer back to the definition of an explosive provided in the instructions for Count 1.

The term "interstate commerce" from element number three, to prove that the property the defendant is charged with damaging or destroying or attempting to damage or destroy was used in interstate commerce or used in an activity that affects interstate commerce, the government can have proved beyond a reasonable doubt that the property is a business related property that is actively used for some commercial purposes.

Alternatively, to prove the interstate commerce element, the government can have proved, beyond a reasonable doubt, that a property used for residential

purposes is a rental property.  The defendant need not have been aware that the property was used in any activity affecting interstate commerce to be found guilty.

Now as to aiding and abetting for Counts 1 and 2, in Counts 1 and 2, the defendant is also charged with aiding and abetting those crimes.  This is an alternate -- an alternate theory of liability.

To aid and abet a crime means to intentionally help someone else commit the crime charged.  To establish aiding and abetting the government must prove beyond a reasonable doubt that, number one, the charged crime was actually committed by someone, referred to as the principal; number two, the defendant took an affirmative act to help or cause the charged crime; and number three, the defendant intended to help or cause the commission of that crime.

I will now instruct you further on some of the parts of these elements.  So from element number two, affirmative act, the second element, which is the affirmative act element, can be satisfied without proof that the defendant participated in or assisted the principal with each and every element of the crime charged.  It is enough if he assisted in the commission of that crime or caused it to be credited.

Intent from element three, the third element, which

is the intent element, is satisfied if the defendant had advanced knowledge of the facts that make the principal's conduct criminal.

The intent element can be satisfied if the government has proved that defendant knew the conduct he was assisting in was unlawful.  Advanced knowledge means knowledge at a time the defendant can opt to walk away.

A general suspicion that an unlawful act may occur or that something criminal is happening is not enough.  Mere presence at the scene of a crime and knowledge that the crime is being committed are also not sufficient to constitute aiding and abetting.  But you may consider these things, among other factors, in determining whether the defendant [sic] has met its burden of proof.  A defendant need not have actually assisted the principal in committing each element of the crime to be liable as an aider and abettor.  The government does not have to prosecute or identify the principal that the defendant is alleged to have aided or abetted.

As to unanimity, in every count where the defendant is charged both as a principal and as an aider and abettor, you may find him guilty only if you unanimously conclude beyond a reasonable doubt that he was at least one of the two.  You need not be unanimous as to whether he was a principal as opposed to an aider and abettor.

But to find the defendant guilty each of you must conclude, beyond a reasonable doubt, that he was one or the other.

All right. A form with verdict questions has been prepared for you. It is -- this verdict form is simply written notice of the decision you will reach.

I will now review the verdict -- do we have the verdict form?

You will take the form with you when you go to the jury room where you will deliberate with a view towards reaching a unanimous answer to the questions on the verdict form. The answer to each question must be the unanimous answer of the jury if such unanimity is possible, meaning that every juror must agree on the answer.

Your foreperson will write the unanimous answer of the jury in the space provided under each applicable question. When you have reached unanimous agreement as to each applicable question on the verdict form, the foreperson should fill in the date and sign the form at the bottom of the last page.

After completing the verdict form, the foreperson should advise the court security officer. Just knock on the door. There will be a court security person sitting outside, advice court security that you are ready to

render your verdict.

Now as to jury deliberations -- and as to the verdict form, that might -- I'm still in the process of getting the verdict form.  The verdict form is going to have questions.  It's going to say what the charge is and it's going to have a box for you to check.

Well, there it is.

This verdict form is very straightforward and it's simply Count 1 and Count 2.  It names what the count or the charge is and it has a box for guilty or not guilty. All right.

Now when you go to the jury room, your first function will be to select a foreperson.  So you select a foreperson amongst yourselves.  The foreperson does not have any greater power than any other juror and their vote does not have any more importance than other votes.  But the foreperson serves to help you conduct your deliberations in an orderly manner and make sure each of you has an opportunity to express your opinion.  The foreperson is also responsible for ensuring that you conduct your deliberations in accordance with the court's instructions.

Now during deliberations you are, of course, allowed to take breaks.  However, you may not discuss the case until all members of the jury are present.  Thus, if you

separate briefly, if you take a break to have a snack, to use the bathroom, to take a walk, to clear your head, if every single juror is not in the deliberation room, there is no deliberations.  They have to stop until everyone is present.  When I say stop, it stops even talking about anything to do with the case until everyone is in that room.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the jury officer or court security officer outside your door.  No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed note, and I will communicate with any member of the jury on anything in the case only in writing or by bringing you as the jury back into court and talking to you about it in court.

If you send out a question, I consult with the parties as quickly as possible before answering it.  You may continue your deliberations.  If the foreperson writes out a note and you send it in, during the time it takes me to get people together and talk to them, you can continue your deliberations.

Until your verdict is announced in open court, no juror is permitted to disclose to anyone the status of your deliberations or the nature of your deliberations or

your verdict.  You are not to tell anyone, including me, how the jury stands, numerical or otherwise, until after you have reached a unanimous verdict or have been discharged.

You may only discuss the case in the jury room with your fellow jurors during the deliberations.  As has been the case throughout this trial, you may not use any electronic device or service to communicate to anyone any information about this case or to conduct any research about this case.

Additionally, as I explained at the beginning of the trial, your cell phones will not be allowed in the jury room during your deliberations.  The clerk will collect them and put them in a box and hold them in another room. If somebody needs to take a break to check their phone, you take a break.  You'll know where the cell phone is and you can check your cell phone and then go back to deliberations.

So this completes my instructions.  And for the first time in however long we've been together, I am going to tell you as you leave the courtroom you can talk to each other about the case now.

All right.  I'll hear the parties on WhisperTech.

(Sidebar conference.)

THE COURT:  Okay.  As to the satisfaction or

objections to the instructions?

ATTORNEY DESROCHES:  Your Honor, the government is satisfied other than the objection we've already discussed.

THE COURT:  Okay.  Other than the inclusion of intoxication?

ATTORNEY DESROCHES:  Yes, Your Honor.

THE COURT:  All right.  That objection is noted.

ATTORNEY WATKINS:  Your Honor, again, we object to the consciousness of guilt and aiding and abetting instructions as set forth in our docket entry 287.

Separately we object -- I shouldn't say we object, we would note that the instruction the government gave concerning the I-91 issue that I raised this morning was insufficient to cure the issues of burden shifting and improper speculation that it invited, and so those would be our objections.

THE COURT:  All right.  I'm not going to recognize those objections, but they are preserved now for the record.

ATTORNEY WATKINS:  That's all we have.

(End of sidebar conference.)

THE COURT:  All right.  Now we'll go through the process of identifying and separating the alternates

before everyone begins -- before the jury begins their deliberations.

All right.  Madam clerk.

CLERK RIVERA:  Juror No. 42 and Juror No. 41, Seats 13 and 14, you two are the alternates.

THE COURT:  So the alternates will be taken to a separate room and the alternates -- you can take your notes with you in the separate room, but the alternates should not discuss this case.  At any time you may be put into service if it's needed so you cannot discuss the case while you are awaiting in alternate status.

(The alternates left the courtroom.)

THE COURT:  So, ladies and gentlemen, you can stand up.  You are leaving the court now, as I said, to finally be able to talk to each other about the case.  The exhibits and the verdict form will be checked one last time by the court and the parties and be brought into you.

ATTORNEY DESROCHES:  Your Honor, I'm sorry, a foreperson?  I don't believe the court --

CLERK HEALY:  They're going to choose themselves.

THE COURT:  The foreperson is chosen amongst the jury by themselves.  That was in the instructions.  The first thing you do is as you group you choose your

foreperson.  All right.

ATTORNEY DESROCHES:  Thank you, Your Honor.

THE COURT:  No problem.

**(The jurors left at 10:40.)**

THE COURT:  So we know who doesn't listen to my instructions.

ATTORNEY DESROCHES:  I was reading along.  I don't know how I missed that.  In the past, had you designated the foreperson?

THE COURT:  All the time, yeah.

So come examine the verdict form please, and I'll need you to review the exhibits and make a statement on the record that you're satisfied with the verdict form and satisfied with the exhibits.

ATTORNEY BRESLOW:  Your Honor, while Attorney Desroches is doing that, I'm going to go downstairs and check on the exhibits.

THE COURT:  Okay.

THE DEFENDANT:  May I use the restroom, Your Honor?

THE COURT:  Sure.

THE DEFENDANT:  Thank you, sir.

ATTORNEY DESROCHES:  There's no objection from the government.

THE COURT:  As to the verdict form?

ATTORNEY DESROCHES:  Correct.

ATTORNEY WATKINS:  Likewise from the defendant, we concur with the verdict form.

THE COURT:  All right.  Very good.  Thank you. So Steve is bringing all the exhibits up?

ATTORNEY DESROCHES:  I believe so.  It's one disk on a computer that we will send back.

THE COURT:  So how -- you'll work it out between yourselves if you're going to review that?

ATTORNEY WATKINS:  Yes, we will review it.  Are you sending back paper copies as well?

ATTORNEY DESROCHES:  I believe just the disk.

ATTORNEY WATKINS:  That's good.

**(A recess was taken at 10:42 until 11:21.)**

CLERK RIVERA:  Do the parties want to look at the exhibits?

ATTORNEY BRESLOW:  I just want to say this is my responsibility.  I did not -- I was not aware how long it would take to process.

THE COURT:  Yes.

CLERK RIVERA:  It takes a long time.

ATTORNEY BRESLOW:  Right.  I just was unaware, so I apologize.

THE COURT:  Okay.  Fine.  So as long as we know and we now know as well, we will write a requirement to

the procedural order that this has to be done by a certain time.

ATTORNEY BRESLOW:  Yeah.

THE COURT:  Okay.  If there's a problem, call me back.  If everyone agrees, put that agreement on the record.

(Pause in the proceeding until 11:34.)

CLERK RIVERA:  Back on the record with Criminal Case No. 20-30018, the United States versus John Michael Rathbun.

ATTORNEY DESROCHES:  Your Honor, the government is satisfied with the current exhibit list going back to the jurors and the exhibits.

There is four audio calls I believe that are burning right now.  There's a transcript attached.  Once those calls are done, we will send them back separately from this list.

THE COURT:  Will the transcript go back before the audio is burned?

ATTORNEY BRESLOW:  Yes.

ATTORNEY DESROCHES:  Yes.

THE COURT:  Is that agreeable?

ATTORNEY WATKINS:  That is agreeable at this point.

THE COURT:  All right.  So at this point the

government is satisfied with everything except four audio calls which will be -- they're being burned to a disk. They will be going in in a few minutes; is that correct?

ATTORNEY DESROCHES:  I don't know the time frame, but as quickly as they're done, yes.

THE COURT:  The defense?

ATTORNEY WATKINS:  The defendant is content with the exhibit list that has been presented to us by the court, which documents the JURIS disk that is going back to the jury.

THE COURT:  So you're satisfied with the JURIS disk that's going back, minus those audio recordings which will go back hopefully soon?

ATTORNEY BRESLOW:  Right.

ATTORNEY WATKINS:  When the government has completed them, yes.

THE COURT:  You're satisfied with that?

ATTORNEY WATKINS:  Yes.

THE COURT:  Okay.  And with that, we will give the jurors the instructions and the verdict form.

ATTORNEY BRESLOW:  Yes.  Could Your Honor just instruct the jury that the four recorded calls involving the defendant and his mother, that the audio will be provided as soon as it's available?

THE COURT:  If I do that, I have to bring them

all in and so it's not really --

ATTORNEY BRESLOW:  Right.

THE COURT:  I don't think -- if it's going to be to them in the next ten minutes, I don't think it's --

ATTORNEY BRESLOW:  We just don't know the time frame.  I don't think it's necessary to bring them back in and interrupt their deliberations.

THE COURT:  Let me get this on the record.  Do the parties agree -- Bethany, are you there?  I didn't see you -- with bringing the disk back, what we just talked about, the parties being satisfied with?  We are also going to give them two copies of the written instructions and the verdict form.  Does the government agree with that?

ATTORNEY DESROCHES:  Yes, Your Honor.

THE COURT:  Defense?

ATTORNEY WATKINS:  Yes.

THE COURT:  Okay.  All right.  Very good.  So they will be -- they're talking about the case right now.  I mean, their deliberations are going on before they had the exhibits, and now deliberations with instructions and the verdict form are going to continue waiting for the audio and so I hope the audio is soon.  Okay.

ATTORNEY WATKINS:  Your Honor, just because we are in the middle of housekeeping matters, can I just note

that I still have not heard back from jury administrator Jim Mackler.

THE COURT:  Thank you for reminding me.  You will hear back from me.  I'll go back and try to put something together for my ruling on that was well.  I did -- I put out a request for information from him, but with everything else going on I wasn't able to --

ATTORNEY WATKINS:  I understand.

THE COURT:  -- kind of put it into a form to get to you.

ATTORNEY WATKINS:  Thank you, Your Honor.

THE COURT:  Thank you.

ATTORNEY DESROCHES:  Thank you.

ATTORNEY BRESLOW:  Good morning, Your Honor.  Good morning, everyone.

**(A recess was taken at 11:37 until 12:29.)**

CLERK RIVERA:  Court is back in session with Criminal Case No. 20-30018, the United States of America versus John Michael Rathbun.

THE COURT:  We're back on the record.  There was a note handed in by the foreperson of the jury, and the note is, "is there" -- I'm quoting -- "Is there any word on when we will receive the digital exhibits?  Also, can we get more water?"

Clearly indicative that there's a problem in getting

things to the JURIS system.  This is not good at all that the jury is waiting, and I know we're going to have a procedure.  I know everyone is aware of the problem and we will be remedying it, all of us, in the future, but solved now because they have it.

So the clerk has to walk into the jury room -- and what do you have to do?

CLERK RIVERA:  I have to open the program.

THE COURT:  You open the program in the JURIS system for them to access.  So they have it.  So I'm not going to bring the jury in to tell them there was any problems because it's there.  So it's a nonissue now, and we got them more water.  Okay.

CLERK RIVERA:  Okay.

THE COURT:  Can you mark this note please?

CLERK RIVERA:  Yes.

ATTORNEY DESROCHES:  Thank you, Your hHonor.

THE COURT:  Satisfied both sides with handling it that way?

ATTORNEY DESROCHES:  Yes.

ATTORNEY BRESLOW:  Yes.

ATTORNEY WATKINS:  Yes.

THE COURT:  Okay.

ATTORNEY BRESLOW:  Good afternoon, Your Honor.

**(Court Exhibit 1 marked.)**

**(A recess was taken at 12:31 until 3:09.)**

THE COURT:  Okay.  A note was sent from the foreperson of the jury indicating they have a verdict.  So that note can be marked please and that will be what, two?

CLERK RIVERA:  Court Number 2.

**(Court Exhibit 2 marked.)**

THE COURT:  Okay.  You can be seated.  Obviously when the jury comes in, we will stand again.

**(The jury entered at 3:10.)**

THE COURT:  All right.  Ladies and gentlemen, the note was returned to me indicating that you have a verdict.  Can you please identify who the foreperson of the jury is?

THE FOREPERSON:  I am.

THE COURT:  All right.  You are juror number?

THE FOREPERSON:  Thirty-eight.

THE COURT:  All right.  Can you please hand forward the verdict form?

Mr. Foreperson, was this verdict unanimous?

THE FOREPERSON:  Yes.

THE COURT:  Ladies and gentlemen, I'll ask you all of you to respond.  Was this verdict answer?

THE JURY:  Yes, Your Honor.

THE COURT:  All right.  You can be seated.

The parties remain standing.

All right.  Jury verdict:  Count 1, 18 U.S.C. 844(D), as to Count 1 of the superseding indictment charging attempt to transport or receive or transportation or receipt of an explosive or aiding or abetting the commission of this crime on or about April 2, 2020, we, the jury, find the defendant, John Michael Rathbun, guilty.

As to Count 2 of the superseding indictment charging attempt to damage or destroy buildings, vehicles, or real or personal property by fire or explosive or aiding or abetting the commission of this crime on or about April 2, 2020, we, the jury, find the defendant, John Michael Rathbun, guilty.

The foregoing represents the unanimous decision of the jury dated June 15, 2021, signed by the foreperson of the jury.

All right.  You can be seated.

ATTORNEY WATKINS:  Your Honor, we'd request that the jury be poled.

THE COURT:  All right.

Ladies and gentlemen, the defense has made a perfectly appropriate request for poling of the jury, and that simply requires me inquiring of each juror individually if this was their verdict.

All right.  So I will start by seat.  So I'll call

the seat number, I'll say seat one, two, three, and each time it's your seat number just rise and I'll ask you if the verdict I read is your verdict and if that's how you voted. All right?

So juror in Seat 1, please rise. All right. Juror in Seat 1, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR No. 1: Yes, Your Honor.

THE COURT: All right. Thank you.

Juror in Seat 2, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR No. 2: Yes, Your Honor.

THE COURT: Thank you.

Juror 3, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 3: Yes, Your Honor.

THE COURT: Thank you.

Seat 4, was it your verdict guilty on Count 1 and Count 2?

JUROR NO 4: Yes, Your Honor.

THE COURT: Thank you.

Seat 5, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 5: Yes, Your Honor.

THE COURT: Thank you.

Juror 6, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 6:  Yes, Your Honor.

THE COURT:  Okay.

Juror 7, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 7:  Yes, Your Honor.

THE COURT:  All right.

Foreperson, seat -- you are?

THE FOREPERSON:  Eight.

THE COURT:  The Foreperson in Seat 8, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 8:  Yes, Your Honor.

THE COURT:  Okay.

Seat 9, sir, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 9:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.

Seat 10, sir, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO. 10:  Yes, Your Honor.

THE COURT:  Seat 11, ma'am, was it your verdict guilty on Count 1 and guilty on Count 2?

JUROR NO 11:  Yes, Your Honor.

THE COURT:  Seat 12, sir, was it your verdict

guilty on Count 1 and guilty on Count 2?

JUROR NO. 12:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.

All right.  The verdict will be recorded.

Okay.  Ladies and gentlemen, including the alternates who served a very useful and important role to be here, thank you so much for your service.  This can at times be grueling.  You have paid such close attention it's been obvious to the evidence.

The system of justice does not work without your commitment, without your coming in as members of the community and serving out this very, very important and in fact vital function, this public service.  So thank you very much for being here.

I'm happy to talk to all of you at length.  I will come visit you, if you want to stay.  You do not have to stay, but you can go back into the room you've been using as the jury room.  I will be in there within five to ten minutes.  If you want to stay, I would be happy to talk to you about your service and to thank you in a more personal way by talking to you about what happened today.

I'd be interested to hear your comments and feedback as to how this system worked and what we can do better just for handling jurors, if you would have suggestions to make the process better in the future.  All right.  Thank

you very much.

CLERK RIVERA:  All rise for the jury.

(The jury left the courtroom.)

THE COURT:  Government, is there a motion?

ATTORNEY BRESLOW:  Yes, under 3143(A)(2) we move for remand, Your Honor.

THE COURT:  I'm sorry?

ATTORNEY BRESLOW:  Under Title 18, United States Code Section 3143(A)(2) we move for remand.

THE COURT:  All right.

ATTORNEY WATKINS:  Your Honor, we're asking that the court keep Mr. Rathbun on pretrial release on the conditions he's currently on.  18 U.S.C. 3145(C) provides essentially a safety valve, an exception to the mandatory detention in exceptional circumstances, extraordinary circumstances.

We would say that this is extraordinary circumstances.  I won't belabor the point because the court may know Mr. Rathbun better or at least as well as any defendant that's before it currently, but what the court knows is that Mr. Rathbun has been successful in addressing his drug addiction.

He's now been in a rehabilitation program that's close by the court here.  He has incurred no difficulties whatsoever on some very, very difficult and very, very

stringent kinds of conditions.

So at this stage it definitely would be clear and convincing evidence that he's not going to flee and that's clear. I think what the court understands is Mr. Rathbun is a long-term resident here. All of his ties are here. But, more importantly, that there's no clear and convincing evidence that he will not be a danger to the community. I think that's shown in spades here.

I think what we all know from this case certainly that Mr. Rathbun when he's actively using has done horrible things. But when he's not using, which is now, where he's closely monitored he can be and has been a productive person. I think the court can be confident that he can stay out on pretrial release pending the sentencing here.

THE COURT: All right. I think the return of these guilty verdicts are a drastic change in circumstances. I'm revoking his release. I'm remanding him in the custody the marshals.

We'll need to set a date. So we're going to set a date that's convenient for the parties.

Just hold on one moment before everyone goes downstairs.

Attorney Watkins, we're going to set a date, and I have responses to that jury questionnaire motion that you

filed.  I'm prepared to read those findings into the record, but I'm going to talk to the jury first.  So I'm asking you at your convenience, would you like that to be this afternoon that I do that, or would you like to schedule another time where I make those findings on the record regarding your request?

ATTORNEY WATKINS:  If the court's amenable, I'd rather do it another time.  There's some pressing matters that I should get to today as well.

THE COURT:  Sure.  Can you just -- it will not take long for me to make the record.  I can do it as soon as tomorrow sometime if you're around in the building, but I'll leave it to you to talk to the clerk to work out a time for that.  All right?

ATTORNEY WATKINS:  If we can actually do it on Thursday, that would be even better if we have time available then?

THE COURT:  Are you in the building?

ATTORNEY WATKINS:  I will be in the building.  I can make myself available on Thursday.

THE COURT:  The only question is will you be requesting that Mr. Rathbun be brought in for that when I'm just going to be making my findings on the record?

ATTORNEY WATKINS:  We can waive his presence for purposes of that.  It's simply the court reading its

findings.

THE COURT:  Okay.  Very good.

CLERK RIVERA:  Sentencing set for November 12th at 12 p.m.

THE COURT:  Is that agreeable?

ATTORNEY BRESLOW:  Yes, Your Honor.

ATTORNEY WATKINS:  Yes.

THE COURT:  Okay.  All right.  Very good.  We are all set.

**(Court recessed at 3:22.)**

--------------

C E R T I F I C A T E


UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    )


         I certify that the foregoing is a correct

transcript from the record of proceedings in the

above-entitled matter to the best of my skill and ability.


(The certification of this transcript does not apply to
any reproduction of this transcript, unless under the
direct control and/or supervision of the certifying
reporter.  I assume no responsibility for the accuracy of
any reproduced copies not made under my control or
direction.)


/s/ Alice Moran                       May 30, 2022
Alice Moran, RMR, RPR
Federal Official Court Reporter